YOUNG, J.
This appeal concerns the proper method of scoring offense variable 3 (OV 3), which addresses “physical injury to a victim.” MCL 777.33. The defendant in this case was convicted of second-degree murder on the basis of the shooting death of John Strong. Offense variable 3 requires the sentencing judge to select one from among the several listed scoring elements and assign points that range from a high of one hundred for a death to zero when no injury occurred. The sentencing guidelines require that the sentencing judge assess the highest number. of points applicable. Generally speaking, the higher the number of points assessed, the longer the resulting sentence.
In determining defendant’s sentence under the legislative guidelines, the trial court assessed twenty-five points for OV 3 because the victim suffered an injury-a gunshot wound. Defendant was sentenced to life imprisonment, in part on the basis of this scoring determination.
On appeal, defendant argues that he should not have been assessed any points for OV 3. This variable provides that the sentencing court must score one hundred points when a victim dies unless homicide is the sentencing offense. Defendant would have been appropriately assessed one hundred points but for the fact that second-degree murder, a form of homicide, was the sentencing offense. Defendant argues that none of the other variable elements requiring the assessment of points was applicable and, therefore, the trial court’s only option was to assess zero points.
*402 We disagree. The defendant not only killed the victim, but in the process also caused a physical injury — a gunshot wound to the head.[1] Consequently, although the court did not have the option of assessing one hundred points for OV 3, it properly assessed twenty-five points on the basis of the next applicable variable element: “Life threatening or permanent incapacitating injury.” This conclusion is mandated by the fact that the statute governing OV 3 requires that trial courts assess the highest number of points possible.
Accordingly, we affirm the judgment of the Court of Appeals.
FACTS AND PROCEDURAL HISTORY
In December 2001, John Strong was the victim of an attempted robbery in Flint, Michigan. During the course of the robbery, Mr. Strong’s assailant shot him in the head, killing him. Defendant Duane Houston was charged with Mr. Strong’s death. Although he maintained his innocence throughout his trial, defendant was convicted by a jury of second-degree murder[2] and possession of a firearm during the commission of a felony,[3] and was acquitted of assault with intent to rob while armed.[4] The court sentenced defendant as a second felony offender to a term of life, plus a term of two years.
Defendant appealed by right to the Court of Appeals, arguing that the trial court had misscored OV 3 and *403 offense variable 14 (OV 14)[5] and had erred by sentencing him to life imprisonment as an habitual offender.[6] In affirming defendant’s convictions, the panel assumed arguendo that the offense variables were scored erroneously, but held that any error was harmless because defendant was properly sentenced to life imprisonment as a repeat offender.[7]
In November 2004, we granted defendant’s application for leave to appeal, limiting the parties to the following issues: “(1) whether Offense Variable 3, MCL 777.33, was properly scored and (2) whether a sentence of life imprisonment falls within the statutory sentencing guidelines for second-degree murder for a defendant who is an habitual offender.”[8]
STANDARD OF REVIEW
Statutory construction is a question of law subject to review de novo.[9] Our paramount task is to discern and give effect to the Legislature’s intent as manifest in the plain, unambiguous language of its statutes.[10]
*404 analysis
I
We must begin, as always, with the language of the governing statutes. At the time defendant was sentenced,[11] MCL 777.33 (OV 3) provided:
(1) Offense variable 3 is physical injury to a victim. Score offense variable 3 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points:
(a) A victim was killed.....................................100 points
(b) A victim was killed.......................................35 points
(c) Life threatening or permanent incapacitating injury occurred to a victim...............25 points
(d) Bodily injury requiring medical treatment occurred to a victim.....................................10 points
(e) Bodily injury not requiring medical treatment occurred to a victim.....................5 points
(f) No physical injury occurred to a victim........0 points
(2) All of the following apply to scoring offense variable 3:
(a) In multiple offender cases, if 1 offender is assessed points for death or physical injury, all offenders shall be assessed the same number of points.
(b) Score 100 points if death results from the commission of a crime and homicide is not the sentencing offense.
(c) Score 35 points if death results from the commission of a crime and the offense or attempted offense involves the operation of a vehicle, vessel, ORVi snowmobile, aircraft, or locomotive under the influence or while impaired causing death.
*405 (d) Do not score 5 points if bodily injury is an element of the sentencing offense.
(3) As used in this section, “requiring medical treatment” refers to the necessity for treatment and not the victim’s success in obtaining treatment. [Emphasis added.]
Defendant argues that, because the statute governing OV 3 prohibits the trial court from scoring one hundred points on the basis of the death of the victim when homicide is the sentencing offense, the court in this case was required to assess zero points. Implicit in this argument is the assumption that only the “ultimate result” of a defendant’s criminal act — here, the death rather than the injury that preceded the death— may be considered in scoring OV 3. The prosecution argues, on the other hand, that the court correctly assessed twenty-five points for OV 3. Because the court was precluded from considering the victim’s death under MCL 777.33(2)(b), it could, in the prosecution’s view, consider and score the next applicable factor on the basis of the physical injury that preceded the victim’s death.
Faithful application of the plain language of MCL 777.33 demonstrates that the prosecution is correct and that defendant was properly assessed twenty-five points for OV 3 in this case.
The Legislature expressly prohibited the assessment of one hundred points when, as here, the underlying offense is homicide.[12] Consequently, one hundred points under MCL 777.33(l)(a) must be excluded as a possible assessment for OV 3.[13]
*406 It is equally clear, according to the plain language of MCL 777.33(l)(f), that zero points must be excluded as an option because zero points may be assessed under that subsection only when “[n]o physical injury occurred to a victim.”[14] The gunshot wound to the victim’s head in this case unquestionably constitutes a physical injury. Therefore, the trial court did not have the option of scoring zero points for OV 3.[15]
*407 The only options left for the trial court, therefore, were to assess either twenty-five points under MCL 777.33(l)(c) or ten points under MCL 777.33(l)(d) on the basis of the life-threatening bodily injury requiring medical treatment sustained by the victim — viz., the gunshot wound to the victim’s head. Because the statute directs the trial court to award the highest number of points possible under OV 3, the trial court was required to assess twenty-five points under MCL 777.33(l)(e).[16]
Therefore, the trial court correctly assessed twenty-five points for OV 3. When defendant’s offense variables are properly scored, his recommended sentence under the legislative guidelines is 180 to 300 months or life. *408 Accordingly, the trial court did not err in sentencing defendant to life for second-degree murder, and its sentence must be affirmed.
ii
Our conclusion in part I follows from the plain language of the statute and the undisputed facts in this case.
Defendant offers three arguments to counter this reading of the statute governing OV 3. First, he asserts that only the ultimate outcome of the criminal act — the victim’s death, in this case — may be considered in scoring OV 3. The statute obviously contains no “ultimate outcome” requirement.[17] Rather, it instructs courts to “[s]core offense variable 3 by determining which of the following apply and by assigning the number of points attributable to the one that has the highest number of points.”[18] This language indicates that the Legislature believed that multiple scoring factors may apply to a single offense. The statute simply indicates that the one scoring factor ultimately selected should (a) be applicable and (b) yield the highest number of points possible. Where more than one factor might apply (e.g., when a life-threatening injury requires medical treatment), the one generating the highest points is the correct one. The defendant’s assumption that only the ultimate outcome of the defendant’s act may be considered in scoring OV 3 is therefore undermined by the statutory language.
Defendant’s second argument is a variation on the first. Defendant argues that OV 3 presents a “graduated scale,” meting out the greatest number of points to those who inflict the greatest harm. In light of this *409 purported “scale,” it would be incongruous, in defendant’s view, to assess twenty-five points for a mere physical injury when the defendant caused the victim’s death.
This argument, however ironic,[19] is unpersuasive for the reasons already noted. The Legislature intended for multiple factors to apply and directed courts to select one in order to assess the highest number of points possible. The Legislature has explicitly eliminated the option of assessing one hundred points in homicide cases, but not the requirement of assessing the “highest number of points” possible. The graduated nature of OV 3 therefore does not lead to the conclusion that defendant may receive zero points for this offense variable.
Finally, defendant argues that zero points must be scored for OV 3 because the Michigan offense variables “generally [indicate] a legislative policy of not assessing points for factors that are inherent in the elements of the offense for which the defendant is being sentenced.”[20] Thus, defendant argues: “With the exception of the anomalous and later-added MCL 777.33(l)(b), involving alcohol-related deaths, this OV assesses points for aggravating circumstances, not for factors inherent in the sentencing offense itself.”
This is an odd and unpersuasive argument. We consistently look to and enforce the plain language of statutes rather than some imagined “legislative purpose” supposedly lurking behind that language.[21] The *410 text of MCL 777.33 is quite clear and, as shown in part I, requires the assessment of twenty-five points in this case. Defendant offers no reason to abandon our usual rule of statutory construction.
Moreover, the Legislature has in this very statute demonstrated its ability to preclude the scoring of points for circumstances that are a necessary element of the sentencing offense. For instance, MCL 777.33(2) (b) precludes the scoring of one hundred points where death is an element of the sentencing offense. In addition, MCL 777.33(2)(d) precludes the scoring of five points where bodily injury is an element of the sentencing offense. Therefore, if the Legislature had intended to preclude the scoring of twenty-five points where death is an element of the sentencing offense, it clearly knew how to do so. Thus, none of defendant’s arguments offers a persuasive reason to depart from the Legislature’s intent as manifest in the plain language of the statute governing OV 3.
CONCLUSION
On the basis of the foregoing, we conclude that the trial court did not err in assessing twenty-five points for OV 3 and sentencing defendant to life imprisonment. We therefore affirm the judgment of the Court of Appeals.[22]
Taylor, C.J., and Corrigan and Markman, JJ., concurred with Young, J.

 The dissent detects an “inconsistency” between our recognition that the victim suffered an injury and our conclusion that the victim suffered a life-threatening injury. Post at 411. But a life-threatening injury is an injury. We fail to see an “inconsistency” here.

 MCL 750.317.

 MCL 750.227b.

 MCL 750.89.

 Our order granting leave to appeal in this case was limited to considering the scoring of OV 3. 471 Mich 913 (2004). Indeed, the Court of Appeals opinion notes that any error in scoring OV 14 would not have affected defendant’s sentence. 261 Mich App 463, 471; 683 NW2d 192 (2004). We do not address OV 14 in this appeal.

 Defendant also argued before the Court of Appeals that the trial court abused its discretion in admitting evidence regarding defendant’s possession of a weapon similar to that used in the murder. 261 Mich App 465-470. The Court of Appeals panel rejected that argument and we excluded that issue from our limited order granting leave to appeal. 417 Mich 913.

 261 Mich App 472-473.

 471 Mich 913.

 People v Perkins, 468 Mich 448, 452; 662 NW2d 727 (2003).

 Lansing Mayor v Pub Service Comm, 470 Mich 154, 157; 680 NW2d 840 (2004).

 MCL 777.33 was later amended in a manner not germane to the legal question at issue here.

 MCL 777.33(2)(b).

 MCL 777.33(2)(c) states that thirty-five points are to be scored only when the underlying offense “irivolve[s] the operation of a vehicle, vessel, ORY snowmobile, aircraft, or locomotive ....” Because the underlying offense in this case did not involve the operation of any of the listed *406 conveyances, thirty-five points under MCL 777.33(l)(b) must be excluded as a possible assessment for OV 3 as well. Five points under MCL 777.33(l)(e) must also be excluded; the victim did not suffer a “bodily injury not requiring medical treatment” because a gunshot wound to the head is, quite obviously, a bodily injury that does require medical treatment.

 It may also be appropriate in some cases to score zero points where “[bjodily injury not requiring medical treatment occurred to a victim” and “bodily injury is an element of the sentencing offense” — although, as discussed earlier, “[bjodily injury not requiring medical treatment” does not apply to the victim in this case. MCL 777.33(l)(e) and (2)(d). Justice Cavanagh believes this supports his position. We disagree.
MCL 777.33 requires that the trial court assign the greatest number of points possible when scoring OV 3. When (a) a victim incurs a bodily injury not requiring medical treatment and (b) bodily injury is an element of the sentencing offense, the highest number of points possible under OV 3 is zero points. But when a victim dies after receiving a life-threatening injury, the highest number of points possible is twenty-five points. Justice Cavanagh’s argument is therefore premised on failure to follow a clear statutory requirement: that of assessing the highest number of points possible.

 Justice Cavanagh posits that “[i]f homicide is an element of the sentencing offense, a defendant should not be assessed any points for OV 3 ....” Post at 415 (emphasis added). However, MCL 777.33(2)(b) states that if homicide is an element of the sentencing offense, a defendant should not be assessed one hundred points for OV 3. In other words, MCL 777.33(2)(b) specifically precludes the scoring of one hundred points where the sentencing offense is a homicide. If the Legislature, as the dissent contends, had intended to preclude the scoring of any points where the sentencing offense is a homicide, why did it only specifically preclude the scoring of one hundred points’! Indeed, that the Legislature precluded the scoring of one hundred points where the sentencing offense *407 is a homicide suggests that the Legislature intended some points to be scored where the sentencing offense is a homicide.

 The dissent asserts that MCL 777.33(l)(c) is simply inapplicable where a victim actually dies after receiving a life-threatening injury, maintaining that there is a critical distinction between a “life-threatening” or “potentially fatal injury” and a “life-ending” or “fatal injury.” Post at 411. We see no support in the statute for the position that an injury that actually causes death cannot be said to have once been a “life-threatening” or “potentially fatal injury.”
Nor does the dissent’s distinction have much logical appeal. Suppose that Mr. Jones was the victim of a life-threatening injury — say, severe head trauma — on Day 1 and is hospitalized. On Day 50, despite heroic medical efforts to save him, Mr. Jones dies. The defendant is charged with homicide for the resulting death of the victim. Under the dissent’s rationale, Mr. Jones’s severe head trauma was never a “life-threatening injury” because, in the end, he actually died.
Thus, the dissent’s “interesting conundrum” is purely the product of its own “contorted analysis.” Post at 413, 414. Contrary to the dissent, we think it can be said that a victim who “dies instantly” has suffered a “life-threatening injury.” Post at 413. In this case, the victim suffered a gunshot wound to the head. Although the shot may have killed him immediately, the fact remains that the injury itself was truly life-threatening. Indeed, to paraphrase Justice Markman’s dissenting statement in People v Hauser, 468 Mich 861, 862 (2003), the victim sustained an injury so life-threatening that it was followed by his death.

 See part I of this opinion (quoting the relevant statutory language).

 MCL 777.33(1) (emphasis added).

 To the extent that more egregious crimes should receive higher points as the statute directs, it is surely more consistent with defendant’s purported “scale” to assess him twenty-five rather than zero points.

 Defendant’s brief at 5 (emphasis in original).

 See, e.g., Sotelo v Grant Twp, 470 Mich 95, 100; 680 NW2d 381 (2004).

 However, for the reasons stated in Justice Cavanagh’s dissent, we do not agree with the Court of Appeals analysis of MCL 777.21.