# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANDREW CARLOS WRIGHT,

        Defendant-Appellant.

UNPUBLISHED
December 4, 2014

No. 317086
Wayne Circuit Court
LC No. 11-011611-FC

---

Before: BORRELLO, P.J., and WILDER and STEPHENS, JJ.

PER CURIAM.

Defendant was convicted in a bench trial of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. He was sentenced to 18 to 40 years' imprisonment for the second-degree murder conviction, and two years' imprisonment for the felony-firearm conviction. He appeals of right his sentence, and for the reasons set forth in this opinion, we affirm.

This appeal arises from a shooting that took place during the early morning hours of October 17, 2011, in Detroit, Michigan. On October 17, 2011, at approximately 5:00 a.m., Jason Harbin and his friend, Aamir Fuqua, traveled to the home of Lakeisha Pringle for the purpose of borrowing her car. Harbin planned to move away and start a new life with defendant's wife, Connie, and the son that Harbin and Connie had together while Connie was married to defendant.[1] Harbin drove Pringle's vehicle to defendant's house; while Fuqua sat in the rear driver's seat. Harbin sent Connie several text messages to indicate that he was waiting outside; however, when Connie failed to respond, Harbin exited the vehicle and walked toward defendant's house. As Harbin walked toward the house, defendant was waiting outside with a firearm, and began firing shots at Harbin. Harbin attempted to flee the area but defendant walked toward him and the vehicle as he continued to fire shots. As Harbin ran away from defendant, he yelled at Fuqua, who was still inside the vehicle, to flee the scene. Harbin was hit by one bullet in the leg but was able to escape. Fuqua made his way into the driver's seat of the car and shifted into drive; however, he was fatally struck in the back by one of defendant's

---

[1] Defendant and Connie were still married on the date of the shooting.

-1-

gunshots. Police officers found Fuqua dead in the driver's seat of the vehicle when they arrived at the scene.

At the conclusion of the bench trial, the trial court made extensive findings of fact. Specifically, the trial court found that on the morning of the shooting, Harbin traveled to defendant's home for the purpose of picking up Connie and their son, "and that it was [Harbin's] intention to take them both away from the defendant's residence and that they were going to start a life together." The trial court also found that defendant was waiting outside his home at the time that Harbin arrived, and that defendant was the person who shot at Harbin and Fuqua. The trial court concluded that defendant was not guilty of assault with intent to murder in the context of his shooting Harbin; specifically, the trial court found that defendant was acting in self-defense because Harbin was walking onto his property, and defendant possessed a reasonable apprehension that Harbin intended to cause him harm. However, the trial court concluded that defendant did not have a reasonable fear of harm from Fuqua, who remained in the vehicle, on the street, throughout the entire incident. The trial court found that Fuqua was unarmed at the time of the shooting, and that defendant possessed "an intent to do great bodily harm or . . . an intent to kill." Ultimately, the trial court concluded that defendant was guilty of second-degree murder in the shooting of Fuqua. This appeal then ensued.

On appeal, defendant argues that he is entitled to resentencing because the trial court inaccurately assessed points for Offense Variables (OV) 1, 3, 5, and 6. Specifically, defendant argues that he should have been assessed zero points for OV 1 because the shooting was done in self-defense, and was directed at Jason Harbin, not the victim. Further, defendant contends that he was not even aware that the victim was present at the time of the shooting because the victim remained in a vehicle on the street throughout the incident. Defendant also contends that he should have been assessed zero points for OV 3 because homicide was the sentencing offense. Defendant argues that he should have been assessed zero points for OV 5 because there was no evidence presented to suggest that the victim's family suffered severe psychological injury requiring professional treatment. Defendant contends that he should have been assessed zero points, or in the alternative, 10 points for OV 6, because he was in an extreme emotional state at the time of the shooting and he did not possess the intent to shoot the victim.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013). This Court reviews de novo whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute. *Hardy*, 494 Mich at 438.

OV 1 is the offense variable relating to aggravated use of a weapon. MCL 777.31(1); *People v Morson*, 471 Mich 248, 256; 685 NW2d 203 (2004). Pursuant to OV 1, 25 points must be assessed where a firearm was discharged at or toward a human being. MCL 777.31(1)(a). Fifteen points must be assessed where "a firearm was pointed at or toward a victim or the victim had a reasonable apprehension of an immediate battery when threatened with a knife or other cutting or stabbing weapon." MCL 777.31(1)(c). Alternatively, pursuant to OV 1, five points must be assessed if a weapon was displayed or implied. MCL 777.31(1)(e). Zero points must be assessed if no aggravated use of a weapon occurred. MCL 777.31(1)(f).

Defendant argues that he should have been assessed zero points for OV 1 because the victim "was not outside of a vehicle and therefore not in a position to be seen" by defendant at the time of the shooting. Further, defendant argues that he was shooting at Harbin, not at the victim. However, defendant's argument is meritless. The trial court assessed 25 points for OV 1. Defendant shot at Harbin and the vehicle with the victim inside; defendant necessarily pointed a firearm at or toward the victim because he actually, and fatally, hit the victim with one of his gunshots. Though the victim remained in the vehicle throughout the shooting incident, Harbin yelled out to him as defendant was shooting that he should flee the scene; however, defendant continued to fire his weapon in the direction of Harbin and the vehicle. Accordingly, defendant pointed his firearm at the car where he had reasons to believe another person was located and fired. We therefore concur with the trial court's finding that defendant fired his weapon at or toward the victim and Harbin. Therefore, the trial court's assessment of 25 points for OV 1 was correct.

OV 3 is the offense variable relating to physical injury to a victim. MCL 777.33. Pursuant to OV 3, 100 points must be assessed if a victim was killed; however, 100 points may only be assessed "if death results from the commission of a crime and homicide is not the sentencing offense." MCL 777.33(2)(b). Fifty points may be assessed under OV 3 if "death results from the commission of a crime and the offense . . . involves the operation of a vehicle." MCL 777.33(2)(c). Twenty-five points may be assessed under OV 3 if a "life threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). Zero points must be assessed for OV 3 if "no physical injury occurred to a victim." MCL 777.33(1)(f). Our Supreme Court has held that 25 points may be assessed for OV 3 in cases where homicide is the sentencing offense. *People v Houston*, 473 Mich 399, 405-408; 702 NW2d 530 (2005).

Defendant argues, in cursory fashion, that "zero points should have been assessed since the death of . . . [T]he victim did not result from the commission of an offense that was not homicide." The trial court assessed 25 points for OV 3[2] because it concluded that *Houston* was controlling. Defendant shot and killed the victim; accordingly, life threatening or permanently incapacitating injury was inflicted by defendant upon the victim. Defendant's argument has no basis in law; 25 points may be assessed for OV 3, even where homicide is the sentencing offense, as it is here. See *Houston*, 473 Mich at 405-408. The trial court's assessment of 25 points for OV 3 was correct.

OV 5 is the offense variable relating to psychological injury to members of a victim's family. MCL 777.35. Under OV 5, 15 points may be assessed where "serious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). Alternatively, zero points must be assessed for OV 5 where no serious psychological injury requiring professional treatment occurred to a victim's family. MCL 777.35(1)(b). Whether a

---

[2] The Sentencing Information Report denotes that 50 points were assessed for OV 3; however, the trial court clearly ruled that 25 points should be assessed for OV 3 at sentencing. However, the ultimate calculation of the total OV points assessed (95 points) on the Sentencing Information report was correct.

family member of the victim has actually sought professional treatment is not determinative. *People v Portellos*, 298 Mich App 431, 449; 827 NW2d 725 (2012) (citing MCL 777.35(2)). Rather, 15 points may be assessed "if the serious psychological injury to the victim's family may require professional treatment." MCL 777.35(2).

Defendant argues that there was no evidence presented supporting the assertion that a member of the victim's family suffered serious psychological injury requiring professional treatment. The trial court assessed 15 points for OV 5; specifically, the trial court stated:

> The issue for scoring points on OV [5] has to do with psychological injury sustained by a member of the victim's family. In a homicide case I think in terms of reading the impact statement submitted by the deceased's father, I think certainly it does point to serious psychological injury, for which I know that the Fuqua [f]amily has been seeking some counseling through their religious denomination.

> I think that that certainly is reflective of the fact that this is the kind of impact on the family that this scoring mandates.

> So noting the defense's objection, it will be scored at 15 points.

In the Presentence Investigation Report (PSIR), a victim's impact statement was included from the victim's father. The victim's father stated that "he and his wife have been receiving spiritual counseling and are trying to find closure for their family." Further, at sentencing, the victim's father, mother, and brother each stated, under oath, that they were overwhelmed with grief resulting from the death of the victim. None of the victim's family members stated at the sentencing hearing that they were seeking professional treatment for their psychological injuries. Defendant's argument that the victim's family members failed to demonstrate serious psychological injury is meritless. Specifically, the victim's father stated that he and his wife were overwhelmed with grief at the loss of the victim, and they were seeking spiritual counseling. Further, the victim's father, mother, and brother stated that they were suffering from extreme emotional anguish due to the death of the victim. Accordingly, the trial court's decision to assess 15 points for OV 5 was based in fact and law. Defendant is not entitled to relief on this issue.

OV 6 is the offense variable relating to an offender's intent to kill or injure another individual. MCL 777.36. Under OV 6, 50 points may be assessed where "[t]he offender had premeditated intent to kill . . . ." MCL 777.36(1)(a). Alternatively, 25 points may be assessed under OV 6 if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). Ten points may be assessed if "the offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life." MCL 777.36(1)(c). Zero points must be assessed for OV 6 if the offender had no intent to kill or injure. MCL 777.36(1)(d). In making a scoring determination for OV 6, the trial court must

assess points for the variable "consistent with a jury verdict unless the judge has information that was not presented to the jury." MCL 777.36(2)(a).

Defendant argues that he should have been assessed zero points for OV 6 because he was found not guilty of assault with intent to murder in his shooting of Harbin. Alternatively, defendant argues that he should have been assessed 10 points, rather than 25 points, because "he was in an extreme emotional state, which allowed him the defense of self-defense with respect to . . . Harbin." The trial court assessed 25 points for OV 6; specifically, it stated:

> But I do find that the shooting at Mr. Fuqua as he was attempting to drive away and get away from the shooting scene was intentional. I did find that [defendant] was guilty of murder in the second degree.

> And as the instruction indicates, that unless the sentencing court has information that was not presented to the jury, an offender's OV [6] score must be consistent the jury's verdict [sic]. And obviously it should also be similarly consistent with the Court's verdict in this particular case, and 25 points is the actual element of the intent element or state of mind element necessary for murder in the second degree.

> So OV [6] will be scored at 25 points.

The trial court's assessment of 25 points for OV 6 was correct. Defendant was convicted of second-degree murder for the shooting of the victim because defendant possessed "an intent to do great bodily harm or . . . an intent to kill." Accordingly, an assessment of 25 points for OV 6 was consistent with the trial court's verdict of second-degree murder. The trial court's decision to find defendant not guilty of assault with intent to murder regarding the shooting of Harbin is irrelevant to the scoring of OV 6; though the trial court determined that defendant shot Harbin in self-defense, defendant had no legal justification for shooting and killing the victim, who remained in the vehicle on the street during the shooting incident.

Further, defendant alleges that he was in an extreme emotional state at the time of the shooting, which requires an assessment of 10 points for OV 6. However, though defendant was likely angry at the prospect of Harbin coming to his home for the purpose of taking away his wife, he was already waiting outside, ready to shoot, when Harbin exited the vehicle and approached the house. Accordingly, the trial court's assessment of 25 points for OV 6 was correct.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kurtis T. Wilder
/s/ Cynthia Diane Stephens