*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MARIO WILLIS,

        Defendant-Appellant.

UNPUBLISHED
April 16, 2020

No. 346057
Wayne Circuit Court
LC No. 09-028750-01-FC

Before: RONAYNE KRAUSE, P.J., and CAVANAGH and SHAPIRO, JJ.

PER CURIAM.

Defendant was convicted, following a jury trial, of second-degree murder, MCL 750.317, and arson of a dwelling-house, MCL 750.72. He was acquitted of first-degree felony murder, MCL 750.316(1)(a). The sentencing guidelines as initially scored recommended a minimum sentence between 180 months and 300 months. He was originally sentenced to 500 to 750 months for the second-degree murder conviction and 10 to 20 years for the arson of a dwelling-house conviction. Defendant appealed to this Court; we vacated defendant's sentences and remanded the case to the trial court for resentencing on the grounds that the trial court erred in failing to justify the extent of its departure from the sentencing guidelines range.[1] Defendant was resentenced by the same judge, and his sentences remained unchanged. Defendant again appealed, and this Court vacated his sentences and remanded for resentencing before a different judge.[2] However, the Supreme Court vacated that judgment and remanded to us in light of *Lockridge*.[3]

---

[1] *People v Willis* (*Willis I*), unpublished per curiam opinion of the Court of Appeals, issued November 1, 2012 (Docket No. 298643).

[2] *People v Willis* (*Willis II*), unpublished per curiam opinion of the Court of Appeals, issued August 11, 2015 (Docket No. 320659).

[3] *People v Willis*, 498 Mich 947 (2015).

We again vacated defendant's sentences and remanded for resentencing before a different judge.[4] Defendant was resentenced, for the second time, to 450 to 700 months for second-degree murder and 10 to 20 years for arson of a dwelling-house. Defendant now appeals as of right. Although we affirm the trial court's scoring of the guidelines, we again vacate defendant's sentences and remand for resentencing because the court failed to sufficiently explain why a minimum sentence of 450 months was required in order for the sentence to be proportional to the offense and the offender as opposed to a sentence within the rescored guidelines range, which provided for a minimum term anywhere between 225 to 375 months.

## I. BACKGROUND

This case arises from an incident where defendant paid his employee, Darian Dove, to set fire to a house owned by defendant's then-girlfriend, apparently to avoid loss of the home to foreclosure. The house was empty when the fire was set. Firefighters arrived, entered the home and one of them, Walter Harris, was killed when a ceiling collapsed onto him. Defendant was charged with arson of a dwelling-house and second-degree murder on the theory that he had acted in wanton and willful disregard of the likelihood that setting the fire would naturally tend to cause death or great bodily harm.[5]

## II. GUIDELINES SCORING

Defendant argues that the trial court erred in assessing points for offense variable (OV) 1, 2, 3, 6, and 19. We disagree as to each and will review them *seriatim*.[6]

First, defendant argues that the trial court erred in assessing 20 points for OV 1 (aggravated use of a weapon). OV 1 is assessed 20 points if "[t]he victim was subjected or exposed to a[n] . . . incendiary device." MCL 777.31(1)(b).[7] Zero points are assessed if "[n]o aggravated use of a weapon occurred." MCL 777.31(1)(f). Defendant contends that the victim must have been "subjected or exposed" to the incendiary device, i.e., gasoline. Gasoline is an incendiary device, MCL 777.31(3)(b), and Dove used gasoline to start the house fire. Thus, the victim was "subjected or exposed to an . . . incendiary device" for purposes of OV 1 when, pursuant to his duties, he entered the burning home.

Additionally, defendant contends that OV 1 should not be scored because the record does not show that the gasoline was *intended* to be used as a "weapon." The word "weapon" is not

---

[4] *People v Willis* (*Willis III*), unpublished per curiam opinion of the Court of Appeals, issued February 1, 2018 (Docket No. 320659).

[5] For a more thorough recitation of the facts, see *Willis I*, unpub op at 1-2.

[6] "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

[7] Defendant does not dispute that the deceased was a "victim" for purposes of OV scoring.

defined in MCL 777.31, and very little caselaw has considered its meaning for the purposes of OV 1. This Court has generally relied on the dictionary definition, under which a "weapon" is some kind of instrumentality used offensively or defensively in combat or against another person. See *People v Gary*, 305 Mich App 10, 12- 14; 849 NW2d 414 (2014); *People v Hutcheson*, 308 Mich App 10, 14- 16; 865 NW2d 44 (2014); *People v Ball*, 297 Mich App 121, 125- 126; 823 NW2d 150 (2012). In *Gary*, this Court explained that a methamphetamine lab did not constitute a "weapon" under OV 1 despite arguably being a "harmful chemical substance" or "incendiary device" to which the victim was exposed, because the defendant did not *use* it as a weapon. *Gary*, 305 Mich App at 13-14. In *Ball*, a fatal dose of heroin did not constitute a "weapon" under OV 1 despite being a "harmful chemical substance" capable of being used as a weapon, because, again, the defendant did not *use* it as a weapon. *Ball*, 297 Mich App at 124-126. Whether the gasoline here was a weapon turns, therefore, on whether defendant used it offensively or defensively against another person.

The evidence in this matter showed that defendant asked his employee to intentionally start the fire using gasoline. The gasoline was therefore clearly used as an instrumentality, and we are aware of no reason why OV 1 should mandate that defendant wielded it personally. Unlike the drug-related situations in *Gary* and *Ball*, defendant here unambiguously intended to use the gasoline for the purpose of causing harm. Furthermore, the victim here was neither unluckily in the wrong place at the wrong time, nor was he a voluntary participant in the arson. However, an instrumentality is not a "weapon" unless it is used offensively or defensively against a *person*. Intentionally burning a house does not necessarily constitute an intent to harm any people, nor does it necessarily constitute using the gasoline against another person. The trial court erred in concluding that the gasoline was a "weapon" *just* because it was intentionally used to cause some kind of harm and a person died as a result.

Nevertheless, just as we are not persuaded that defendant must have wielded an instrumentality personally, we are also not persuaded that its intentionally harmful use must only be directly and immediately against a person. The jury convicted defendant of second-degree murder based on his involvement in burning the house. The jury therefore implicitly found that defendant *did* use the gasoline as an offensive instrumentality against a person, even if that use against a person was indirect and achieved by way of destroying property. Furthermore, as noted, the victim, a firefighter, was not an unforeseeable hapless bystander and did not choose to encounter the danger; rather, the victim entered the burning structure specifically because his duties required him to do so. Thus, under the circumstances, we find harmless the trial court's failure to make an express factual finding as to defendant's intent in using the gasoline. We therefore reject defendant's argument that the gasoline was not a "weapon" for purposes of OV 1.[8]

Second, defendant argues that the trial court erred in assessing 15 points for OV 2 (lethal potential of weapon possessed or used). Defendant contends that assessing points for OV 2 "constituted impermissible double counting" because the conduct was already accounted for in the assessing of OV 1 (aggravated use of a weapon). OV 2 is assessed 15 points if "[t]he offender

---

[8] This same analysis of what constitutes a "weapon" under OV 1 applies equally to the meaning of a "weapon" for purposes of OV 2.

possessed or used an incendiary device, an explosive device, or a fully automatic weapon." MCL 777.32(1)(b). Zero points are assessed if "[t]he offender possessed or used no weapon." MCL 777.32(1)(f).

Contrary to defendant's argument, OV 1 and 2 address two different considerations. OV 1 provides for the assessment of points for the use of a weapon, while OV 2 provides for the assessment of points for a weapon's lethal potential. MCL 777.31(1); MCL 777.32(1). Therefore, assessing points under both variables was proper as "[e]ach variable is directed toward a different purpose." *People v Jarvi*, 216 Mich App 161, 164; 548 NW2d 676 (1996).

Third, defendant argues that the trial court erred in assessing 25 points for OV 3 (physical injury to a victim). OV 3 is assessed 100 points if "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). However, because 100 points may not be scored if the crime is a homicide, MCL 777.33(2)(a), defendant argues that the OV should be scored at zero.[9] This argument fails. Caselaw is clear that a defendant found guilty of homicide should be scored 25 points for OV 3. See *People v Houston*, 473 Mich 399, 401-402; 702 NW2d 530 (2005).[10]

Fourth, defendant argues that the trial court erred in assessing 25 points for OV 6 (intent to kill or injure). OV 6 is assessed 25 points if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). We find no error. Defendant was convicted of second-degree murder which requires one of the three states of mind listed in OV 6. Therefore, the scoring was proper.[11]

Lastly, defendant argues that the trial court erred in assessing 10 points for OV 19 (interference with the administration of justice). OV 19 is assessed 10 points if "[t]he offender otherwise interfered with or attempted to interfere with the administration of justice . . . ." MCL

---

[9] Defendant does dispute that the manner of death was homicide, but relies on an opinion letter from Dr. Ljubisa Dragovic, the chief forensic pathologist and medical examiner for Oakland County, Michigan. Dr. Dragovic opined that the cause of death was accidental because the victim suffered from a serious natural disease that was aggravated by the circumstances. Nonetheless, there was plainly sufficient evidence for the trial court to find that the victim suffered a life-threatening injury.

[10] We previously upheld the assessment of 25 points for OV 3, *Willis I*, unpub op at 17, and therefore are precluded by from redeciding this issue in the absence of injustice. See *People v Phillips*, 227 Mich App 28, 33; 575 NW2d 784 (1997). We see no grounds to depart from our prior ruling.

[11] The trial court had to assess 25 points for OV 6 unless it had "information that was not presented to the jury." MCL 777.36(2)(a). Defendant argues that the court now has information that was not presented to the jury, i.e., the recent recantation of the primary witness against him. However, as the trial court noted, if the witness has in fact recanted, the proper means to seek relief would be in a motion for relief from judgment.

777.49(c). Zero points are assessed if "[t]he offender did not threaten the security of a penal institution or court or interfere with or attempt to interfere with the administration of justice . . . ." MCL 777.49(d). "[T]he plain and ordinary meaning of 'interfere with the administration of justice' for purposes of OV 19 is to oppose so as to hamper, hinder, or obstruct the act or process of administering judgment of individuals or causes by judicial process." *People v Hershey*, 303 Mich App 330, 343; 844 NW2d 127 (2013). Moreover, "OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016).

Here, the scoring of OV 19 concerns defendant's alibi witness, Megan Daniels. Daniels was defendant's girlfriend at the time of the offense, and is now his wife. She was listed as an alibi witness only days before trial. Defendant argues that he did not present a "last hour" alibi witness as he previously identified Daniels as an alibi witness to law enforcement. However, the interview where defendant purportedly made that disclosure is not part of the record. Nor has defendant provided us with the trial transcript of his girlfriend's testimony. We are therefore unable to review this issue and deem it abandoned. See *McRoberts v Ferguson*, 322 Mich App 125, 137; 910 NW2d 721 (2017). We do note, however, that this Court previously had the opportunity to review the trial transcripts and affirmed the initial sentencing judge's finding that defendant orchestrated perjury by Daniels. *People v Willis* (*Willis I*), unpublished per curiam opinion of the Court of Appeals, issued November 1, 2012 (Docket No. 298643), p 19.

## III. UPWARD SENTENCE DEPARTURE

Defendant's sentencing guidelines as scored at his resentencing recommended a minimum term between 225 months and 375 months. The minimum sentence imposed was 450 months. Defendant argues that the upward departure from the guidelines range was unreasonable because the trial court focused only on the nature of the offense, while ignoring his background, violating the principle of proportionality. We agree. The sentence imposed was 75 months above the top of the minimum sentence guidelines range, and 225 months above the bottom of the range. The trial court's explanation for imposing a sentence so far above the guidelines was not adequate to justify that departure.

We review sentences that depart from the advisory guidelines range for reasonableness. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). A sentence is reasonable if it adheres to the principle of proportionality, which "requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Walden*, 319 Mich App 344, 351-352; 901 NW2d 142 (2017) (quotation marks and citation omitted). In *People v Milbourn*, 435 Mich 630, 660; 461 NW2d 1 (1990), the Supreme Court explained:

> Even where some departure appears to be appropriate, the extent of the departure (rather than the fact of the departure itself) may embody a violation of the principle of proportionality. See *People v McKinley*, 168 Mich App 496, 512; 425 NW2d 460 (1988) ("We do not dispute that a prison sentence—even a lengthy one—is in order. We conclude, however, that a fifteen-year minimum sentence for the events that occurred here is disproportionate to the specific acts committed and the danger involved. *Too frequently reasons are given for a sentence that apply equally to a*

*lesser or greater sentence unless an explanation is offered on the record for the specific sentence given.* Such was the case here.") (Emphasis added.)

In finding that a guideline sentence is not proportional, the trial court must " 'justify the sentence imposed in order to facilitate appellate review.' " *People v Steanhouse*, 500 Mich 453, 470; 902 NW2d 327 (2017), quoting *Lockridge*, 498 Mich at 392. In doing so, the trial court may consider: "(1) whether the guidelines accurately reflect the seriousness of the crime, (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight." *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (citations omitted).

In this case, the trial court's reasons for exceeding the guidelines were sparse and without reference to any substantial factors not accounted for in the guidelines. The court did not indicate why it believed a sentence within the guidelines range was inadequate to provide proportional punishment to this defendant. Generalized statements referring to the inadequacy of the recommended guidelines is not a sufficient basis to depart. Rather the trial court must engage in a fact-based review of the offense and the offender and consider whether the guidelines provide a proportional sentence pursuant to *Milbourn* and its progeny.[12] If, after doing so, the court determines that a sentence outside the guidelines range is necessary to craft a proportional sentence, it must also give adequate reasons on the record for the extent of the departure. *Steanhouse*, 500 Mich at 476.

The trial court's primary explanation for this substantial departure was that defendant's OV points totaled 145 points while only 100 was needed to place defendant in the highest offense level for second-degree murder, which provides a minimum sentence range of 225 to 375 months given defendant's prior record variable (PRV) score. See MCL 777.61. However, in this case virtually every OV for which the defendant was scored was inherent in the offenses for which he was convicted if not an actual element. In other words, those points did not reflect that defendant engaged in aggravating actions beyond that of the offenses themselves.

Arson cannot be committed without the use of a mechanism to start it. As discussed, the use of gasoline, an incendiary device, required the scoring of OV 1 and 2. Where a homicide is the offense, OV 3 must be scored at least 25 points. A serious psychological injury to the victim's family will virtually always result in a case such as this, requiring a scoring of 15 points under OV 5. MCL 777.35(1)(a). OV 6 must be assessed 25 points if the offender "created a very high risk of death or great bodily harm knowing that [these] are the probable result," MCL 777.36(1)(b), and OV 9 must be scored at 25 points for placing 10 or more persons in danger, MCL777.39(1)(b). Any arson to which the fire department responds will require this scoring, if, as here, the trial court considers all the firefighters to have been placed in danger. There were only two OVs that were not necessarily implicated by the elements of defendant's offense: OV 14, scored at 10 points because defendant was a leader in multiple offender situation; and OV 19, which was scored at 10 points for interference with the administration of justice regarding defendant's alibi witness.

---

[12] A sentence with the guidelines range is presumptively proportionate. *People v Bowling*, 299 Mich App 552, 558; 830 NW2d 800 (2013).

Thus, there were only 20 OV points more than the bare minimum required given the charges for which defendant was convicted. Moreover, the guidelines provide a range—in this case a very broad range. Assuming a score of 145 points should result in a harsher sentence than an OV score of 101 points, the trial court has substantial room for imposing a harsher sentence within the guidelines themselves. The mere existence of circumstances not scored by the guidelines does not automatically mean that a departure sentence is proportional. Here, the guidelines provided for a range between upper and lower recommendations of more than 12 years. This allowed the trial court to exercise substantial discretion within the guidelines based on its evaluation of the crime and defendant. While the sentencing guidelines are now advisory, they "remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *Lockridge*, 498 Mich at 391. Therefore, "trial courts must consult those Guidelines and take them into account when sentencing." *Id*. (quotation marks and citation omitted). If the case or the defendant has unscored aggravating circumstances the court should consider a sentence at the upper end of the range before determining that a departure is necessary for the sentence to be proportional. Again, if the trial court then determines that a sentence outside the guidelines range is necessary to impose a proportional sentence, it must give adequate reasons on the record for the extent of the departure. *Steanhouse*, 500 Mich at 476.

In addition, the trial court failed to recognize that the recommended range reflected defendant's lack of prior convictions. Defendant, who was 27 years old at the time of the offense, had no scorable criminal history and his PRV total was 10 points based upon the concurrent conviction of arson. In enacting the sentencing guidelines, the Legislature determined as a general matter that defendants with a criminal history should receive "harsher sentences" than "first-time offenders." *Milbourn*, 435 Mich at 635. The court briefly mentioned defendant's lack of criminal history, but did not expressly take that into account when it determined that the recommended range was inadequate.

The court also failed to consider defendant's prison record. Defendant provided documents showing not only the absence of misconduct but also exemplary behavior attested to by guards, counselors, and others who have worked with him during his incarceration. A defendant's behavior in prison since his prior sentencing is a proper consideration on resentencing. See *People v Triplett*, 407 Mich 510, 515; 287 NW2d 165 (1980) (holding that a defendant must be sentenced under "a reasonably updated presentence report" to ensure that sentencing is "individualized and tailored to the particular circumstances of the case and the offender at the time of sentencing.").

The trial court noted that Dove testified that he started a different fire at defendant's direction a year before the events in this case. Defendant was never charged with any crime based on this allegation. While the allegation was an appropriate factor to consider, this alone did not warrant a substantial departure sentence, especially in light of the trial court's failure to "explain how the extent of the departure is proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse (On Remand)*, 322 Mich App 233, 239; 911 NW2d 253 (2017), vacated in part on other grounds 504 Mich 969 (2019).

The death of firefighter Harris was a tragedy caused by defendant's criminal acts and the guidelines allow for a very harsh minimum sentence, more than 30 years.[13] The trial court, however, elected to impose a sentence more than six years above the guideline's maximum-minimum and did so without providing adequate grounds. The trial court focused primarily on defendant's total OV score. However, the vast majority of those points were attributable to the offenses themselves. That is, anyone who committed the crimes defendant was convicted of would have a similar score. Thus, the high OV score, in and of itself, did not provide adequate grounds to sentence defendant more harshly than others guilty of the same crime. Further, the trial court only considered the seriousness of the offense and ignored the background of the offender, whose record and post-conviction activities suggest a sentence within the guidelines range. For those reasons, we conclude that the trial court did not adequately justify its decision to impose the departure sentence.

## IV. RESENTENCING BEFORE A DIFFERENT JUDGE

Defendant argues that he is entitled to resentencing before a different judge. We disagree.

We consider the following factors in determining whether to remand for resentencing before a different judge:

(1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Hill*, 221 Mich App 391, 398; 561 NW2d 862 (1997) (citation and quotation marks omitted).]

Defendant failed to discuss those factors, and instead merely reiterates his arguments for why the sentence itself constituted an abuse of discretion. Further, there is nothing in the record to indicate that the trial court would have difficulty in imposing an appropriate sentence. It will not be necessary for the trial court to set aside its "previously-expressed views" and none of its findings were based on evidence that must now be rejected. *Id*. Therefore, reassignment would thus "entail waste and duplication out of proportion to any gain in preserving the appearance of fairness." *Id*.

We vacate defendant's sentences and remand for resentencing or for the trial court to issue an order clearly articulating its reasons for the departure and its extent. We retain jurisdiction.

/s/ Amy Ronayne Krause
/s/ Mark J. Cavanagh
/s/ Douglas B. Shapiro

---

[13] Defendant is by no means assured of release after having served his minimum term. The parole board may elect to deny him parole in which case he would have to serve his maximum term of 50 years.

# Court of Appeals, State of Michigan

## ORDER

People of MI v Mario Willis

Docket No. 346057

LC No. 09-028750-01-FC

Amy Ronayne Krause
Presiding Judge

Mark J. Cavanagh

Douglas B. Shapiro
Judges

Pursuant to the opinion issued concurrently with this order, the Court VACATES defendant's sentences and REMANDS this matter to the Wayne Circuit Court for further proceedings consistent with the opinion of this Court. We retain jurisdiction.

We remand this matter to the sentencing court because the court failed to sufficiently explain why a minimum sentence of 450 months was required in order for the sentence to be proportional to the offense and the offender as opposed to a sentence within the rescored guidelines range, which provided for a minimum term of anywhere between 225 and 375 months. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017). On remand, the sentencing court must either resentence defendant or enter an order containing a clear articulation of its reasons for the departure and its extent. The proceedings on remand shall commence within 56 days of the Clerk's certification of this order, and shall be given priority until they are concluded. Within seven days after entry, defendant shall file with this Court either a copy of the judgment of sentence memorializing defendant's resentencing or a copy of the order memorializing the sentencing court's reasons for departure and its extent. The transcript of all proceedings on remand shall be prepared and filed with this Court within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

April 16, 2020
Date

Chief Clerk