*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIE JAMES III,

        Defendant-Appellant.

UNPUBLISHED
November 18, 2025
11:48 AM

No. 367082
Eaton Circuit Court
LC No. 2022-020177-FC

Before: GADOLA, C.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant was convicted of second-degree murder, carrying a firearm during the commission of a felony, carrying a concealed weapon, and possession of a firearm by a felon. He was sentenced to 65 to 100 years for the second-degree murder, five years for carrying a firearm during a felony, 20 to 40 years for carrying a concealed weapon, and 20 to 40 years for possession of a firearm by a felon. We affirm the jury's convictions and the trial court's sentencing.

## I. BACKGROUND

This case arises from the fatal shooting of the victim, Antonio "Juice" Taylor, Jr. On November 23, 2021, the victim and three others with him were shopping at a shoe and apparel store in Delta Township. While they were checking out near the front of the store, someone wearing a tan and olive-green jacket, a black mask, and a black hat with the word "Illegal" scrawled across it walked into the store. Surveillance video from the store showed the shooter walk into the store, walk several feet, turn around, walk back to the door, stop, and then pull out a gun to shoot the victim. A witness in the parking lot saw someone sprint out of the store and drive away in a white SUV.

At trial, defendant's former girlfriend Cymba Tipton testified that defendant told her that he committed the murder, that he "kinda just let it go. Like just started shootin." Specifically, she testified that defendant told her that when he walked into the store, he saw a person whom he "had a beef with" and told someone on his phone that "here are my favorite ops." By "ops," she explained that term meant "Opposition, people that you have conflict with, or people that you were beefing with, you guys don't get along." She went on to testify, "He explained it to me as if when

-1-

he walked in, he saw them, and he was scared, like it's either me or them. And in that moment, he felt like he needed—he did what he needed to do considering the fact that he only has one leg." Explaining more, Tipton said defendant explained that "like when he walked in, they like turned around, and they looked at him, and then, like, went on about their business. And he was just like he didn't know what their next move was going to be, so he felt like he had to protect himself."

Tipton turned over to the police a tan and olive-green jacket that she bought for defendant and a black hat that said "Illegal" across the front that defendant wore. Tipton explained that defendant had a prosthetic leg and that he walked with a limp. She also stated that defendant often used her white Dodge Durango and that he was using the vehicle on the day of the shooting.

The prosecutor introduced evidence showing that defendant visited the Prevention and Training Services, P.A.T.S., location in Lansing on the day of the shooting; a worker there who regularly met with defendant testified that defendant was driving a white SUV that day and that the shooter on the surveillance video had a noticeable limp like defendant.

Defendant took the stand and testified in his defense. He testified that on the day of the shooting, he was driving a rental car to Lansing to submit a urine test at P.A.T.S. While in Lansing, he called the store and asked if there was a specific shoe in stock. He was on his way to the store to buy the shoes for his son, but he did not make it there. He testified that he never wore the tan and olive-green jacket and stopped wearing the black hat because Tipton and defendant were in an argument and Tipton was not letting defendant retrieve his clothes. On cross-examination, defendant was questioned about a phone call that defendant made to his father in prison when defendant rapped about his "Glockiana's dehydrated," getting it a juice box, and catching someone while he was trying to buy some shoes.

After the close of proofs and closing arguments, the trial court instructed the jury. During jury deliberations, the trial court received a question from the jury: "From 3.20, you may find the defendant guilty of all or any one or any combination of these crime, guilty of a less serious crime, or not guilty. Does this [mean] the defendant could be found guilty of manslaughter or can we only consider first and second degree murder?" Defendant argued that a voluntary manslaughter instruction should be given because a rational trier of fact could see a heat of passion argument as supported by Tipton's testimony and by the circumstances in the video. The prosecutor argued that voluntary manslaughter was not supported by the evidence, that self-defense had never been argued, and that nothing was presented for adequate provocation that would cause a reasonable person to lose control. Agreeing with the prosecutor that the evidence did not support the instruction, the trial court instructed the jury that it could find defendant guilty of first-degree premeditated murder, guilty of second-degree murder, or not guilty, but that there was no manslaughter in this case.

The jury ultimately found defendant guilty on all four counts: second-degree murder, MCL 750.317; felony firearm, MCL 750.227b; carrying a concealed weapon, MCL 750.227; and possession of a firearm by a felon, MCL 750.224f. At sentencing, the trial court stated, "I've always said that the jury gets it right. But having sat through this trial, I don't understand how the verdict was not for Murder One." The trial court continued its reasoning, "That being said, I'm going to honor the jury's verdict and sentence Mr. James within the sentencing guidelines of the crime he was—crimes he was convicted of." The trial court sentenced defendant to a minimum

of 65 years and a maximum of 100 years for the second-degree murder conviction and five years for felony firearm to be served consecutively. In addition, defendant received 20 to 40 years each for carrying a concealed weapon and for possession of a firearm by a felon, to be served concurrent to the first two convictions.

Defendant now appeals his convictions and sentence.

## II. ANALYSIS

## A. SUFFICIENCY OF THE EVIDENCE

Defendant first argues on appeal that there was a lack of evidence for the jury to convict him of second-degree murder. We review de novo whether the evidence was sufficient to support a conviction. *People v Parkinson*, 348 Mich App 565, 573; 19 NW3d 174 (2023). "In determining whether sufficient evidence exists to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution, and considers whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Harris*, 495 Mich 120, 126; 845 NW2d 477 (2014). Circumstantial evidence and reasonable inferences drawn therefrom may be sufficient to prove the elements of a crime. *People v Jolly*, 442 Mich 458, 466; 502 NW2d 177 (1993).

For second-degree murder, there must have been a (1) death, (2) caused by defendant, (3) with malice, and (4) without justification or excuse. *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998); *People v Spears*, 346 Mich App 494, 517-518; 13 NW3d 20 (2023). Defendant is challenging the second element, specifically that he could not be identified as the shooter in the video. Arguing that the prosecutor could only show "similarities" between him and the purported shooter, defendant lists on appeal several hypothetical pieces of evidence that were not introduced at trial, such as eye witnesses who could identify defendant as the shooter, any photographs of defendant wearing the same jacket as the shooter, any video of defendant taking his former girlfriend's white Dodge Durango, or any GPS tracking specifically placing defendant at the store. Without such evidence, defendant argues, he could not be convicted of second-degree murder.

Defendant's argument is without merit. The prosecutor need not negate every conceivable defense theory; rather, the prosecutor must introduce evidence on each element of the crime sufficient for the jury to find guilt beyond a reasonable doubt. *People v Fletcher*, 260 Mich App 531, 560; 679 NW2d 127 (2004). Here, the prosecutor introduced enough evidence that would lead a reasonable jury to find that defendant was the shooter in the video. There was testimony that defendant admitted to the shooting, that he was driving a white SUV that day, that he wore a hat and jacket like the suspect in the video, and that he walked with a limp like the suspect. Defendant also testified that he was in Lansing and intended to drive to the store. Defendant argues that Tipton had a motive to implicate him for the murder, but it is not this Court's place to interfere with the jury's role of determining the weight of the evidence or deciding the credibility of witnesses. *Id*. at 561. Viewed in the light most favorable to the prosecutor, a reasonable jury could use the circumstantial evidence introduced at trial to find defendant was the shooter in the video and that he was guilty of second-degree murder beyond a reasonable doubt.

## B. VOLUNTARY-MANSLAUGHTER INSTRUCTION

Defendant next argues that the trial court erred by not providing the jury with an instruction for voluntary manslaughter. Jury instructions that involve questions of law are reviewed de novo, but a trial court's determination of whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "A jury instruction on a necessarily included lesser offense is appropriate if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Yeager*, 511 Mich 478, 490; 999 NW2d 490 (2023) (cleaned up).

Manslaughter is a necessarily included lesser offense of murder. *People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003). For voluntary manslaughter, defendant must have killed in the heat of passion, caused by adequate provocation, and with no lapse of time in which a reasonable person, not just the specific defendant, could have controlled his passions. *Yeager*, 511 Mich at 489. Manslaughter is murder without malice; the adequate provocation negates the malice. *Mendoza*, 468 Mich at 536.

Because defendant's defense was that he was not the shooter, he did not introduce evidence at trial that the killing was caused by adequate provocation and with no lapse in time for a reasonable person to control the passion. Defendant argues on appeal that a rational trier of facts could see heat of passion supported by Tipton's testimony and by the circumstances in the video. Tipton testified that defendant told her that he was scared and felt like he had to protect himself, but this testimony alone does not support an adequate provocation nor a finding that there was no lapse in time for a reasonable person to control his passion. A rational view of the video also does not support a manslaughter instruction. The shooter walked into the store with a mask on and his arm already reaching inside his jacket while the victim and his group were in plain sight of defendant.

Although the jury asked the trial court about manslaughter, it is purely speculation to conclude that from that question, the jury would have convicted defendant of manslaughter instead of second-degree murder. The jury ultimately found that defendant killed with malice and without justification or excuse; to convict him for voluntary manslaughter, the jury would have to have found that he killed without malice and with a justification or excuse. Defendant is essentially arguing that the jury would have made different findings of the evidence if given different jury instructions.

The prosecutor introduced evidence of murder with malice and defendant introduced evidence, including his own testimony, that he was not the killer at all. There was nothing in the record to support a voluntary-manslaughter conviction, and therefore the trial court did not abuse its discretion by not giving a voluntary-manslaughter instruction.

## C. SENTENCING

Moving from his convictions to his sentence, defendant raises several challenges to his sentencing, specifically the sentencing guidelines and the trial court's application of them. For sentencing-guidelines scoring, we review for clear error the trial court's factual determinations and

review de novo statutory interpretations and whether the facts are adequate to satisfy the scoring conditions. *People v Hardy*, 494 Mich 430, 438-439; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Antwine,* 293 Mich App 192, 194; 809 NW2d 439 (2011) (cleaned up).

Beginning with Offense Variable (OV) 3, MCL 777.33, defendant argues that the physical-injury-to-the-victim variable should be scored at 0 instead of 25 because *People v Houston*, 473 Mich 399; 702 NW2d 530 (2005), was wrongly decided. The majority's holding in *Houston*— OV 3 is scored at 25 points when there is a life-threatening or permanently incapacitating injury that led to death—is binding on this Court. *Id.* at 407; see also *State Treasurer v Sprague*, 284 Mich App 235, 242; 772 NW2d 452 (2009) (explaining that lower courts are bound by Supreme Court precedent unless and until that precedent is overruled or modified). Accordingly, we will not address further defendant's argument with respect to OV 3 or *Houston*.

Defendant's next claims—challenging the trial court's scoring of OV 5 and OV 9—raise a question of preservation. MCR 6.429(C) provides that "a party shall not raise on appeal an issue challenging the scoring of the sentencing guidelines or challenging the accuracy of the information relied upon in determining a sentence that is within the appropriate guidelines sentence range unless the party has raised the issue at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." Defendant did not challenge the scoring on OV 5 or OV 9 at sentencing, in a motion for resentencing, or in a motion for remand. Thus, we review these unpreserved sentencing claims for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

For the trial court's application of OV 5, defendant claims that there was no serious injury to a family member that went beyond the "expected grief" of the loss of a family member. OV 5 is scored at 15 points if "serious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35. "Serious is defined as having important or dangerous possible consequences," and "a trial court should consider the severity of the injury and the consequences that flow from it, including how the injury has manifested itself before sentencing and is likely to do so in the future, and whether professional treatment has been sought or received." *People v Calloway*, 500 Mich 180, 186; 895 NW2d 165 (2017) (cleaned up). The victim's mother testified and wrote a victim-impact statement where she informed the trial court that she and her children were in several forms of therapy, that anti-depressant medication was not helping, and that she has cried every single day since her son's murder. The trial court did not err when scoring OV 5 at 15 points when the victim's family has sought treatment and suffered these types of psychological injuries.

In scoring OV 9, the number of victims, defendant argues that the score should have been at 10 points because there was less than ten people in the store based on the employee's testimony. For OV 9, the trial court counts "each person who was placed in danger of physical injury or loss of life"; the score is 10 points if between two and nine victims were placed in danger and 25 points if there were at least ten victims. MCL 777.39.

Along with the employee's testimony, video evidence of the store was admitted at trial. The video, at the time of the shooting, shows nine people in the store, not including the shooter.

In addition, just before the shooting, a tenth person is shown, who then walks out of the camera's viewing range. It was not clearly erroneous for the trial court to conclude that the tenth person was still in the store when the shooting took place.

Defendant also takes aim at the reasonableness and proportionality of his sentence. He points out that he will not be eligible for parole until he is 98 years old, which amounts to life in prison without parole, in his view. We review the proportionality of a defendant's sentence for an abuse of discretion. A within-guidelines sentence like this one is reviewed for reasonableness, and, applying a presumption of proportionality, defendant bears the burden of demonstrating that his sentence is unreasonable or disproportionate. *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023).

Our Supreme Court has concluded that certain lengthy sentences as applied to young adults are unconstitutional, based on that Court's reading of several studies involving the human brain. See, e.g., *People v Taylor*, ___ Mich ___, ___; ___ NW3d ___ (2025). Neither the Supreme Court, nor this Court, has held that a lengthy (but within-in guidelines) sentence given to a defendant who commits a murder in his thirties (like defendant here) is cruel or unusual or otherwise unconstitutional. Defendant received an individualized sentence, based on (1) the offenses, (2) defendant's background, including a lengthy criminal history, and (3) other appropriate considerations. We do not find that defendant's within-guidelines sentence was unwarranted or disproportionate, in light of the offender and the offense.

Lastly, defendant claims that his sentence indicated the trial court's desire to sentence him for first-degree murder, of which he was acquitted. Although the trial court said it did not understand how the jury failed to convict defendant of first-degree murder, the trial court then continued by saying that it was going to honor the jury's verdict and sentence defendant within the guidelines range for second-degree murder—and this is precisely what it did. The trial court did not violate *People v Beck*, 504 Mich 605; 939 NW2d 213 (2019).

## III. CONCLUSION

It was reasonable for the jury to find that there was sufficient evidence that defendant walked into the store and shot the victim, committing second-degree murder. Moreover, there were no reversible errors with the jury instructions or defendant's sentences.

Affirm.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle

-6-