*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

LAMONT CEDRIC PLAIR,

      Defendant-Appellant.

UNPUBLISHED
June 22, 2023

No. 360268
Kent Circuit Court
LC No. 20-002402-FC

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

PER CURIAM.

A jury convicted Lamont Cedric Plair of second-degree murder, MCL 750.317, for the stabbing death of Tracy Hunter. The trial court sentenced Plair as a fourth-offense habitual offender, MCL 769.12(1)(a), to a term of 35 to 60 years' imprisonment. Plair contends that his trial counsel was ineffective and that he is entitled to resentencing based on the erroneous scoring of Offense Variable (OV) 3. We affirm Plair's conviction, but vacate his sentence and remand for resentencing.

## I. BACKGROUND

On the night of January 11 through January 12, 2020, a group of friends gathered to play cards. Many people were intoxicated, including Plair. One of the players, Nathaniel McCray, was intoxicated, cheating, and aggressive. As a result, Plair decided to stop playing. After Plair accused McCray of cheating, Plair left the table and headed toward the bathroom. McCray and Hunter (who was also intoxicated) blocked Plair's way. McCray pushed Plair and threatened to "kick [his] ass." Hunter wanted to take the fight outside.

In the early morning hours of January 12, Plair, his girlfriend, Hunter, and Hunter's girlfriend, Ann Martin, went to Martin's house. Martin and Hunter were in the kitchen and Plair was in a nearby bathroom. Hunter and Plair continued to argue, with Hunter telling Plair "you're not gonna do anything to" McCray and "[a]in't nobody going to fuck with" McCray. Martin saw Hunter approach Plair and then heard, "boom, boom, boom." Martin implied that one of the men punched the other; no firearms were involved. She called Hunter and he came back into the

kitchen. Martin noted that Hunter did not appear to be injured at that time. To remove Hunter from the situation, she asked Hunter to take her purse upstairs.

Shortly thereafter, Martin carried a plate of food upstairs to Hunter. Along the way, she heard Plair and his girlfriend talking about making themselves something to eat. She saw a knife in Plair's hand. The blade was "shiny silver and had like four ridges on it." When Martin went into her bedroom, Hunter was laying on the bed. Martin noted that Hunter was nonresponsive and had a small puncture wound on his chest. Hunter died at the scene. And Plair left the house before the police arrived.

Although Martin did not notice it on her way up the stairs, officers noted that Hunter had left a trail of blood as he walked to the bedroom. Responding officers found a silver boxcutter outside the house near a set of fresh shoe tracks through the snow. The tracks were later matched to Plair's shoes. However, no human blood was found during laboratory testing of the box cutter. The medical examiner testified that Hunter's wound was made by a thrusting action; the knife would have to be held "steady" and "firmly." Given the small area where the stabbing allegedly occurred, the medical examiner found it unlikely that Hunter ran "into the knife" and was "impal[ed]."

Plair testified in his own defense at trial. Plair described that after Hunter took Martin's purse to her room, he came back downstairs and threatened to "kick [Plair's] ass." After Martin finished making her sandwiches, she offered Plair the opportunity to make sandwiches for himself and his girlfriend. Plair removed a pocket knife and opened it in order to remove sausages from a pot of boiling water. Plair asserted that from the corner of his eye, he saw Hunter approaching him, swinging. Plair tried to escape to the bathroom, but Hunter followed him and started hitting him. Plair claimed Hunter jumped sideways to block his path. Plair was still holding the knife and asserted that he accidentally stabbed Hunter when the two collided. Hunter continued to hit Plair even after being stabbed, going upstairs only after Martin told him to stop. Hunter went back upstairs, stating "I got something for you." Worried that Hunter was collecting a weapon, Plair left the house.

The jury did not credit Plair's description of events and convicted him as charged. Following his sentencing, Plair appealed.

## II.  ASSISTANCE OF COUNSEL

Plair contends that his trial counsel provided constitutionally deficient assistance. He asserts that counsel failed to adequately prepare for trial, leading to "a lackluster defense." He argues that counsel should have challenged Martin's competency as a witness "given the bizarre nature" of her testimony. Plair further contends that counsel should have objected to the prosecutor's improper vouching for witnesses in closing argument. Plair requested an evidentiary hearing to address his concerns in the trial court, but the court denied his motion. We can adequately review Plair's challenges from the existing record and discern no need to remand for an evidentiary hearing at this time.

To establish the right to a new trial based on the ineffective assistance of counsel, a defendant must satisfy two components: "First, the defendant must show that counsel's

performance was deficient . . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish that counsel's performance was deficient, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). To establish prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664.

Plair is not entitled to a new based on counsel's alleged failure to adequately prepare for trial. While we generally defer to counsel's strategic decisions, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 US at 690-691. When claiming ineffective assistance because of counsel's unpreparedness, a defendant must show prejudice resulting from the lack of preparation. *People v Caballero*, 184 Mich App 636, 640; 459 NW2d 80 (1990).

When moving for a new trial below, Plair submitted an affidavit stating that defense counsel "made no attempts to meet with [him] to discuss any type of defenses, not until a day before a court date." However, Plair has never described what other defenses should have been raised or what information would have been revealed after additional investigation. The defense theory at trial was that Plair accidentally stabbed Hunter. That defense was supported by Plair's testimony and the jury chose not to believe it. Counsel is not ineffective simply because the selected trial strategy is ultimately unsuccessful. *People v Salloway*, 316 Mich App 174, 190; 891 NW2d 255 (2016).

Further, Plair is not entitled to a new trial based on counsel's failure to challenge Martin's competency to testify. We note that Martin testified at Plair's preliminary examination on March 6, 2020. She passed away before the start of trial on November 30, 2021. The prosecutor successfully moved for the admission of Martin's preliminary examination testimony at trial. Plair does not challenge that procedure. Rather, Plair contends that Martin's testimony revealed that she was not mentally competent to testify.

On direct examination, Martin testified that the police interviewed her the day after Hunter's death. She was able to sleep in the meantime and she "started dreamin' and" the events of the night were "flashin' back in [her] mind." This "triggered [her] mind." On cross-examination, counsel elicited testimony that Martin had a dream and "had the whole- -whole re-enactment of everything flashing at" her. The prosecutor returned to this issue on redirect. Martin stated that she "was in shock" and was "tossin' " while trying to fall asleep. She could not stop thinking about what happened and having "visions of the different things goin' on." "[E]verything was poppin' . . . back in [her] mind." The prosecutor clarified with Martin the difference between remembering events while lying awake in bed and dreaming things that might not be accurate or real. Martin testified that the events she remembered as she lay in bed were real—"It happened."

Plair contends that Martin's testimony was "bizarre," "reporting her dream revelation." He argues that "the portion about the dream could have been excluded as fanciful and literally detached from reality." We do not share Plair's view of Martin's testimony. Even if the testimony

were "bizarre," it would not disqualify Martin from testifying. Under MRE 601, witnesses are presumed competent to testify. This is a difficult hurdle to overcome.

> The official comment to FRE 601, which is identical to our MRE 601, states: "A witness wholly without capacity is difficult to imagine. The question is one particularly suited to the jury as one of weight and credibility, subject to judicial authority to review the sufficiency of the evidence." [*People v Flowers*, 222 Mich App 732, 737 n 4; 565 NW2d 12 (1997).]

Given the unlikelihood of having the testimony excluded, it is sound strategy to instead "bring out the witness'[s] delusional tendencies on cross-examination." *Id*. at 737. Defense counsel asked questions at the preliminary examination to emphasize that Martin could not be certain that her memory came from reality or her dream. Those questions would assist the jury in assessing Martin's credibility. This was sound strategy.

Plair further contends that Martin's "memory" of the knife he held on the night in question is inconsistent with the type of knife that caused Hunter's injury. Specifically, Martin remembered a knife with several rough edges that was larger at the base and tapered down, while Hunter's wound was pin-sized. This inconsistency goes to the weight and credibility of Martin's testimony, not its admissibility. Accordingly, counsel had no reason to challenge the admissibility of this evidence.

Plair also has not established his right to a new trial based on counsel's failure to object during the prosecutor's closing argument. In closing, the prosecutor reminded the jurors that it was their duty to judge the credibility of the witnesses, to "consider whether the witness has a bias, prejudice, or personal interest in how the case is decided." The prosecutor listed the state's witnesses and stated that none had an interest in how the case was decided. The prosecutor then stated:

> Now, Kelli Braate, as a detective of the Grand Rapids Police Department, has a duty to investigate this case because that's her job. We expect that from the police department, that when serious issues like this occur, a murder, that the police will conduct an investigation. And she did. But she doesn't have a personal interest in how this case comes out. The only person that has that is the defendant. And you can use that knowledge in assessing whether he is credible or not.

"Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "A prosecutor may not vouch for the credibility of witnesses by claiming some special knowledge with respect to their truthfulness; however, the prosecutor may argue from the facts that a witness should be believed." *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005).

Merely stating that a defendant had a greater personal interest in the outcome of the trial than the other witnesses is not improper vouching. The prosecutor did not claim special knowledge regarding the credibility of the witnesses. Counsel had no reason to object and therefore cannot

be deemed ineffective for failing to do so. *People v Erickson*, 288 Mich App 192, 205; 793 NW2d 120 (2010).

As counsel's performance was constitutionally effective, Plair is not entitled to relief.

### III. SENTENCING

At sentencing, the court scored OV 3 at 50 points, reflecting that the victim's death resulted from the offense or attempted offense involving the operation of a vehicle, vessel, ORV, snowmobile, aircraft, or locomotive. The prosecutor concedes that this was error.

MCL 777.33 governs the assignment of points for physical injury to a victim. MCL 777.33(2)(b) provides that 100 points can only be scored if a death results but homicide was not the sentencing offense. Fifty points is permitted when death results but only when a vehicle of some type is involved. MCL 777.33(2)(c). Accordingly, the highest point value the court could assign for OV 3 in this case was 25 points: "Life threatening or permanent incapacitating injury occurred to a victim." See *People v Houston*, 473 Mich 399, 405-408; 702 NW2d 530 (2005) (concluding that 25 points were properly assessed for OV 3 in a homicide because an injury ultimately resulting in death constitutes a life-threatening injury).

Plair's Prior Record Variable (PVR) score of 110 placed him in PRV Level F and his OV score of 105 placed him in OV Level III. A reduction of 25 points drops Plair into OV Level II. Plair's recommended minimum sentence range of 365 to 1200 months thereby is reduced to 315 to 1050 months. Because this correction results in a change to the recommended minimum sentence range, Plair is entitled resentencing. See *People v Francisco*, 474 Mich 82, 91-92; 711 NW2d 44 (2006).

We affirm Plair's conviction, but vacate his sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado