*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

SHARNAE NICOLE COOK,

Defendant-Appellant.

UNPUBLISHED
August 27, 2025
9:09 AM

No. 369576
Eaton Circuit Court
LC No. 2022-020096-FC

Before: K. F. KELLY, P.J., and MARIANI and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals by right her sentence of 40 to 60 years' imprisonment for her conviction, following a jury trial, of second-degree murder, MCL 750.317. We affirm.

## I. FACTS

Defendant and her companion, Marissa Gilbert, were separately convicted of second-degree murder for the killing of the victim. The victim reportedly had visited Gilbert's apartment, where defendant was also staying, and took a small amount of money (apparently, one dollar) from Gilbert's child's room. Defendant and Gilbert later induced the victim to return to Gilbert's apartment, where they beat him with their hands and with various objects until he was unconscious. They then transported the victim to an apartment from which defendant was being evicted and continued the beating with several other objects, stabbed him repeatedly, and forced him to drink bleach. The latter attack began upstairs, but the victim was forced to the basement, where defendant and Gilbert continued to beat him with various objects. Defendant and Gilbert then left the victim and spent some time back at Gilbert's apartment, eventually returning to defendant's basement to find that the victim had died. They encased portions of the victim's body in plastic bags, dragged him to the yard, and burned him. They then cleaned defendant's apartment, gathering incriminating items in trash bags, and lit defendant's apartment on fire. In all, the attack spanned three days.

The local fire department extinguished the fire and found the victim's body. The landlord identified defendant as the most recent tenant in the apartment, and the police received a tip implicating Gilbert in the killing. Gilbert and defendant were arrested the same day as the fire,

and defendant admitted that she had stabbed and beaten the victim, drilled into his head with a power tool, forced him to drink bleach, and sprayed him with insecticide. The medical examiner stated that the victim's body smelled of gasoline and featured third-degree burns on its lower extremities, other burns on the remainder of the body, and "numerous" blunt- and sharp-force injuries. The examiner stated that the victim's burned clothes had bleach stains, and that there was a bloodied drill bit tangled into the clothing. The examiner determined that the body had at least 182 sharp-force injuries in "all directions . . . [p]retty much scattered everywhere."

Defendant was convicted and sentenced as described. This appeal followed. On appeal, defendant argues that the trial court erred in scoring two offense variables, and issued a sentence that unreasonably departed from the range recommended by the sentencing guidelines.

## II. OFFENSE VARIABLES

Defendant first challenges the trial court's scoring of Offense Variable (OV) 2 and OV 3. We review a trial court's factual findings under the sentencing guidelines for clear error and review de novo whether those factual findings "are adequate to satisfy the scoring conditions prescribed by statute[.]" *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *People v Lydic*, 335 Mich App 486, 490; 967 NW2d 847 (2021) (quotation marks and citation omitted). The trial court's factual findings "must be supported by a preponderance of the evidence," *Hardy*, 494 Mich at 438, which "means such evidence as, when weighed with that opposed to it, has more convincing force and the greater probability of truth," *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). "When calculating sentencing guidelines, the trial court may consider all record evidence, including the presentence investigation report (PSIR), plea admissions, and testimony," and it may rely on all reasonable inferences therefrom. *People v Montague*, 338 Mich App 29, 55; 979 NW2d 406 (2021).

Because, however, defendant did not challenge the scoring of OV 2 or 3 "at sentencing, in a motion for resentencing, or in a motion to remand," her instant challenges to those OVs are not preserved. *People v Sours*, 315 Mich App 346, 348; 890 NW2d 401 (2016) (quotation marks and citation omitted). We review unpreserved scoring challenges for plain error affecting substantial rights. *People v Kimble*, 470 Mich 305, 312; 684 NW2d 669 (2004). To obtain appellate relief under this standard, a defendant must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. And even when those three requirements have been met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citations omitted).

## A. OFFENSE VARIABLE 2

OV 2 concerns the lethal potential of a weapon used or possessed during the crime. MCL 777.32. In this case, the trial court scored OV 2 at 15 points, while defendant argues it should

have been scored only at 5 points. Defendant points out that 15 points are properly assessed when "the offender possessed or used an incendiary device, an explosive device, or a fully automatic weapon," MCL 777.32(1)(b), but here, the gasoline that she possessed during the crime was not used to execute the crime; instead, it was only used to conceal the crime by burning the victim's body after he was killed. Accordingly, defendant maintains, she should have been assessed only 5 points for having used a knife to execute the crime. See MCL 777.32(1)(d).

Regardless of the merits of this line of argument, defendant fails to acknowledge that OV 2 is also properly scored at 15 points when the offender possessed or used a "harmful chemical substance." MCL 777.32(a). And as noted above, the evidence showed that defendant used harmful chemical substances during her violence against the victim, forcing him to drink bleach and spraying him with insecticide while he was covered in open stab wounds. A preponderance of the evidence therefore supported the conclusion that defendant used a "harmful chemical substance" against the victim to murder him, and defendant has offered nothing to suggest otherwise. We see no plain error in the trial court's scoring of this OV.

## B. OFFENSE VARIABLE 3

OV 3 considers physical injury to a victim, and was scored at 25 points in this case because "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(c). Defendant does not dispute the trial court's factual basis for assessing 25 points—that defendant inflicted life-threatening injury on the victim before he died. Defendant also acknowledges that the 25-point assessment is consistent with *People v Houston*, 473 Mich 399; 702 NW2d 530 (2005). In *Houston*, our Supreme Court held that OV 3 was properly scored at 25 points when the defendant was convicted of second-degree murder and the evidence indicated that the defendant had shot the victim in the head. In so holding, the Court rejected the argument that "only the 'ultimate result' of a defendant's criminal act—here, the death rather than the injury that preceded the death—may be considered in scoring OV 3." *Id.* at 405. The Court reasoned that the plain language of the pertinent statute indicated that "[t]he Legislature intended for multiple factors to apply and directed courts to select one in order to assess the highest number of points possible." *Id*. at 409. Defendant asserts that *Houston* was wrongly decided, quoting extensively from the dissent in that case. *Houston*, however, remains binding precedent, and defendant identifies—and we see—no reason why it would not dictate the outcome of defendant's challenge here.[1] Defendant has shown no plain error in the trial court's scoring of this OV, either.

---

[1] Defendant also broadly argues that, if a trial court is authorized to assess 25 points for OV 3 when a defendant is convicted of second-degree murder, then the sentencing grid for second-degree murder would be rendered partially nugatory because, when that score is considered alongside other relevant OVs, no defendant convicted of second-degree murder could ever score in the Level I range of 0 to 49 total OV points. See MCL 777.61. A review of the relevant OVs, however, belies this argument (which presumes, for instance, that every conviction for second-degree murder involves use of a weapon). And in any event, nothing about this argument changes the fact that *Houston* is binding and controls our disposition of defendant's challenge.

## III. UNREASONABLE SENTENCE

Defendant next argues that the trial court's departure sentence was unreasonable and disproportionate. Under the guidelines, the recommended minimum sentence for defendant's conviction of second-degree murder was 225 months (18 years and 9 months) to 375 months (31 years and 3 months). As noted, the trial court imposed a sentence of 40 years to 60 years, which was consistent with the prosecution's request. Therefore, defendant's minimum sentence exceeded the recommended guidelines range by 8 years and 3 months.

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Whether the trial court imposed a reasonable sentence is reviewed for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 476; 902 NW2d 327 (2017). "An unreasonable sentence amounts to an abuse of discretion and a sentence is unreasonable if the trial court failed to follow the principle of proportionality or failed to provide adequate reasons for the extent of the departure from the sentencing guidelines." *People v Sherrill*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 360133); slip op at 9.

Trial courts may "depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate, in either direction, to the seriousness of the crime." *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017) (quotation marks and citation omitted). "To determine a proportionate sentence, a trial court must consider the nature of the offense and the background of the offender." *Sherrill*, ___ Mich App at ___; slip op at 9. In doing so, the trial court must still consult and duly consider the sentencing guidelines, despite their advisory nature. *Lockridge*, 498 Mich at 391. Relevant factors to consider when applying the principle of proportionality include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*Sherrill*, ___ Mich App at ___; slip op at 9 (quotation marks and citation omitted).]

The trial court also "must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been[.]" *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted).

Defendant primarily argues that the trial court erred in imposing its departure sentence because the sentencing variables already accounted for the court's reasons for the departure. A trial court may not base its departure on factors that are "contemplated by at least one [OV]" without explaining why the scoring of that OV was "insufficient to reflect the nature of" the case's circumstances. *Dixon-Bey*, 321 Mich App at 526-527; see also MCL 769.34(3)(b). Here, the trial court expressly recognized this principle and duly applied it. The court concluded that the guidelines as scored failed to account for the circumstances of the offense in this case—namely, its extreme "gruesomeness," "depravity," and "brutal[ity]"—and explained why that was so. The

court adopted the rationale laid out in the prosecution's sentencing memorandum, which detailed how numerous sentencing variables were inadequate as scored, and then offered OV 1 as a particularly illustrative example. As the court explained, that OV was scored at 25 points because "a victim was cut or stabbed with a knife or other cutting or stabbing weapon," MCL 777.31(1)(a), but that score did not account for the sheer volume and extent of stab wounds that the victim in this case suffered—182, all over his body. Defendant stresses that the court's departure explanation reflected considerations already accounted for by OV 7, which was scored at 50 points for "sadism, torture, or excessive brutality," MCL 777.37(1)(a), and OV 5, which was scored at 15 points for psychological injury to the victim's family members, MCL 777.35(1)(a). But the record makes clear that the court viewed these scores as inadequate in light of the particular circumstances of this offense—namely, the many different forms of torture, sadism, and brutality that defendant inflicted on the victim over the course of the multi-day attack, and the severity of trauma that such egregious and inhumane conduct caused to the victim's parents and 11-year-old son. Defendant has shown no error in the court's conclusion that these and other sentencing variables failed to duly capture "the seriousness of the crime," such that an upward departure was warranted. *Walden*, 319 Mich App at 352 (quotation marks and citation omitted).

Defendant also argues that the court erred by failing to take into account, as mitigating factors, that defendant had no prior felonies, disclosed many of the events of the crime during her second police interview, and was not the leader in the crime's commission, instead acting only out of fear of Gilbert. The court, however, specifically considered and rejected this line of argument, explaining that the details of the offense and defendant's participation in it belied the notion that defendant was simply under Gilbert's control and noting that, even during her confession, defendant had not displayed any true remorse for what she did. Defendant maintains that the court's reference to her lack of remorse was improper because she cannot be punished for maintaining her innocence. Defendant is correct that "[a] sentencing court cannot base a sentence even in part on a defendant's refusal to admit guilt," *People v Dobek*, 274 Mich App 58, 104; 732 NW2d 546 (2007)—a principle that might well be implicated by a court's consideration of a defendant's lack of remorse. But that does not categorically preclude a court from taking a defendant's lack of remorse into consideration, see, e.g., *id.*; *Walden*, 319 Mich App at 353, and here, it is apparent that the court did not wrongfully consider as much in evaluating defendant's arguments and the proportionality of her sentence in this case, or improperly base that sentence on any refusal to admit guilt. And while the court did not expressly discuss defendant's lack of prior felonies in explaining its departure, the nature of defendant's prior record was already accounted for in the scoring of her guidelines and defendant has not explained how that accounting may not have been adequate.

Finally, defendant contends that the court erred by failing to explain the extent of its chosen departure. The record, however, does not support this claim. The court explained that, given the extreme nature of defendant's conduct, it was necessary "to remove [her] from society" for longer than 31 years, and that, "look[ing] at deterrence, the ability to rehabilitate, sending a message to the community, and the proportionality that we've already talked about," a minimum sentence of 40 years, which represented a departure of 8.75 years, was appropriate. Based on these comments and the extensive discussion that preceded them, we find that the trial court adequately explained "why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been[.]" *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citations

omitted).  Defendant has thus failed to show any grounds to reverse the trial court's imposed sentence.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani
/s/ Matthew S. Ackerman