*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DANIEL KORIN AUTRY, JR.,

        Defendant-Appellant.

UNPUBLISHED
April 15, 2026
10:06 AM

No. 365946
Berrien Circuit Court
LC No. 2021-002625-FC

Before: O'BRIEN, P.J., and FEENEY and WALLACE, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of second-degree murder, MCL 750.317; felon in possession of a firearm (felon-in-possession), MCL 750.224f; felon-in-possession of ammunition, MCL 750.224f; carrying a concealed weapon (CCW), MCL 750.227; and three counts of carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced as a fourth-offense habitual offender, MCL 769.12, to 600 months' to 75 years' imprisonment for second-degree murder; and 76 months' to 15 years' imprisonment for felon-in-possession, felon-in-possession of ammunition, and CCW; which concurrent terms are to be served consecutive to and after two years' imprisonment for each count of felony-firearm, MCL 750.227b(3). We affirm.

## I. FACTUAL BACKGROUND

This case arises from the shooting of Delray Lloyd by defendant on August 8, 2021, at a gas station in Benton Harbor, Michigan. This incident was captured on a multitude of surveillance cameras inside and outside the gas station; however, none of the videos have audio.

A year before this incident, defendant and Lloyd got into a physical altercation in Indiana. Lloyd's family recorded the fight and posted it on social media. Although defendant described the fight as an attack by Lloyd, an eyewitness, Tyra Scott, testified that defendant texted her brother before the fight that he was going to "whoop" Lloyd, he came over specifically to fight Lloyd, and when defendant could not win, the men shook hands. Scott described the fight as mutual rather than an attack.

On the day of the shooting, defendant was at the gas station first. He went inside to make a purchase, exited, and in the parking lot, he encountered Lloyd and Anthony Newbern. Defendant brushed shoulders with Lloyd before shaking Newbern's hand, and Lloyd looked back in defendant's direction and spit at the ground two times. Lloyd was holding a coffee. Lloyd and Newbern entered the gas station store, and defendant walked to his vehicle at one of the pumps. He opened the front passenger door of the vehicle, then walked back to the store holding the waistband of his pants. Inside the store, Newbern made a purchase at the cash register, and Lloyd grabbed a bottle of water and then stood in line. Defendant entered the store, grabbed a drink from the cooler, and stood in line directly behind Lloyd at the second register.[1]

Lloyd turned around to face defendant, and they engaged in conversation. Defendant then brandished a gun from his waistband and racked it, pointing the gun toward the floor. Defendant dropped his drink in the process and bent down to pick it up. Defendant and Lloyd continued to speak, and Lloyd stepped toward defendant. Defendant raised the gun to Lloyd's left shoulder, and Lloyd took another step toward defendant. Lloyd was still holding his coffee and water. Defendant took a step backward, then shot Lloyd in the upper chest. Lloyd fell to the ground, and defendant ran out of the store. Defendant only fired the gun once, but there were two bullets on top of each other that both expelled, causing two gunshot wounds to Lloyd. According to his autopsy report, both were fatal, and he died on the scene. Although defendant admitted that he shot Lloyd, he claimed he feared Lloyd based on their previous altercation, Lloyd was threatening him again that day, and he acted in self-defense.

Defendant was charged with open murder, MCL 750.316, felon-in-possession, felon-in-possession of ammunition, CCW, and three counts of felony-firearm. After a four-day trial, the jury convicted defendant of the lesser included offense of second-degree murder and the remaining charges. Defendant was sentenced as indicated above.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the evidence was insufficient to support his conviction of second-degree murder because the prosecution did not disprove his theory of self-defense beyond a reasonable doubt. We disagree.

Due process requires that the evidence must show guilt beyond a reasonable doubt to sustain a conviction. *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). This Court reviews challenges to the sufficiency of the evidence de novo. *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). In analyzing a claim of insufficient evidence, the Court must review the evidence in the light most favorable to the prosecution to determine whether the trier of fact could find the elements of the crime were proven beyond a reasonable doubt. *Id*. This

---

[1] According to defendant's trial testimony, he believed there was only one clerk in the store, i.e., the clerk working the line in which Lloyd was standing, but video shows that there were actually two clerks behind the counter. The clerk at the first register (closest to the cooler) was processing a large number of items for a group consisting of four people who were still shopping — all of the other customers were being attended to at the second counter.

-2-

Court must draw all reasonable inferences and make credibility determinations in support of the jury verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). Circumstantial evidence and the reasonable inferences that arise from the evidence may establish the elements of a crime. *Harverson*, 291 Mich App at 175. However, "the circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Xun Wang*, 505 Mich at 251 (quotation marks and citation omitted).

Defendant was convicted of second-degree murder under MCL 750.317, which provides: "All other kinds of murder shall be murder of the second degree, and shall be punished by imprisonment in the state prison for life, or any term of years, in the discretion of the court trying the same." Historically, the elements of second-degree murder were: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Wafer*, 509 Mich 31, 40; 983 NW2d 315 (2022) (quotation marks and citation omitted). This Court clarified that the fourth element, without justification or excuse, is actually "part of the 'cluster of ideas' of second-degree murder. It is not an element of the offense of second-degree murder." *People v Spears*, 346 Mich App 494, 517; 13 NW3d 20 (2023).

Defendant argues that the evidence was insufficient to support his conviction of second-degree murder because his shooting of Lloyd was justified as an act of self-defense.

> A killing may be considered justified if the defendant acts in self-defense. Generally, an individual who is not the aggressor in an encounter is justified in using a reasonable amount of force against his adversary, but only if the individual believes that he is in immediate danger of bodily harm and that the use of force is necessary to avoid said danger. When a defendant raises the issue of self-defense, the defendant must satisfy the initial burden of producing some evidence from which a factfinder could conclude that the elements necessary to establish a prima facie defense of self-defense exist . . . . The prosecution is then required to exclude the possibility of self-defense beyond a reasonable doubt. [*People v Bailey*, 330 Mich App 41, 46-47; 944 NW2d 370 (2019) (quotation marks, brackets, and citations omitted).]

Defendant contends that several pieces of evidence establish he had a reasonable fear of Lloyd, including that (1) Lloyd kept approaching defendant after defendant brandished a gun; (2) defendant backed away from Lloyd; (3) Newbern saw fear in defendant's eyes; (4) Newbern said he and Lloyd were aggressive people; (5) Newbern testified a fight was starting; (5) defendant testified he was afraid of Lloyd; and (6) defendant testified Lloyd again threatened to beat him to death, similar to the previous altercation between the two men.

As an initial matter, Newbern made the statements that he saw fear in defendant's eyes and that he and Lloyd were aggressive people in a letter he drafted after testifying at the preliminary examination. The court was informed of this letter when Newbern was questioned outside the presence of the jury, and the letter was not admitted as an exhibit at trial. "[A] party may not expand the record on appeal, which consists of the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced." *People v Gingrich*, 307 Mich App 656, 659 n 1; 862 NW2d 432 (2014) (quotation marks and citation omitted). As such, the letter is not properly before us and these statements

-3-

made by Newbern within the letter are not considered. Moreover, because the letter was not admitted as an exhibit, these statements were not considered by the jury and would not be included in the record evidence this Court may consider when determining a sufficiency challenge.

Defendant otherwise contends that he had a reasonable fear of Lloyd based on their previous altercation in Indiana because Lloyd was similarly threatening defendant in the moment, and because Lloyd continued to advance at defendant even after defendant raised his gun. The prosecution, however, presented sufficient evidence to rebut defendant's self-defense arguments. The footage of the previous fight between defendant and Lloyd appears to depict mutual combat. Although defendant testified that previously, Lloyd attacked him and defendant tried to run away, the video shows that defendant squared up against Lloyd several times and engaged in the physical altercation. Defendant testified that he forgave Lloyd after the previous fight, and they had no issues for a year. The rebuttal witness, Scott, also described the previous fight as mutual rather than an attack, and said defendant and Lloyd shook hands afterwards. Thus, the prosecution rebutted defendant's assertion of reasonable fear of Lloyd based on their previous altercation. *Bailey*, 330 Mich App 46-47.

Next, defendant asserts he acted in self-defense because Lloyd was threatening to beat him again inside the gas station and proceeded to walk toward defendant even after defendant brandished a gun. Unfortunately, the surveillance videos do not contain audio to corroborate defendant's assertion that Lloyd was verbally threatening to physically abuse him that day. It is clear from the videos that they were engaged in a verbal altercation. However, the surveillance videos in general exclude the possibility of self-defense beyond a reasonable doubt. *Id*. Defendant claims he was in fear of Lloyd; however, defendant reentered the gas station store after encountering Lloyd in the parking lot, nearly brushing shoulders, and Lloyd spitting at the ground in disgust. Defendant could have vacated the premises at that time. Instead, he reentered the gas station to buy Gatorade, testifying at trial that it was a "public area" where he had every right to be. While that assertion is undoubtedly true, the jury was entitled to rely on defendant's decision to reenter the store when considering whether defendant feared for his life in light of Lloyd's mere presence at the gas station.

After retrieving a drink from the cooler, defendant stood directly behind Lloyd in line at the second cashier.[2] Defendant and Lloyd then began arguing, and Lloyd carried two drinks in his hands. Lloyd never raised his hands at defendant. After defendant brandished his gun, racked it, and raised it shoulder-height at Lloyd, Lloyd continued to step toward defendant. This evidence, however, does not establish that defendant could reasonably believe he was at risk of immediate danger of bodily harm or that the use of force was necessary. *Id*. Newbern testified that Lloyd was unarmed, and Lloyd was holding two drinks during the altercation. Viewing this evidence in the light most favorable to the prosecution and in favor of the jury verdict,[3] it is clear that the prosecution presented sufficient evidence to rebut defendant's theory of self-defense beyond a

---

[2] We note that the video shows defendant could have stayed in another area of the store, i.e., to avoid Lloyd, who was standing in line to check out. Instead, defendant chose to get in line behind Lloyd and chose a route that required him to pass by Lloyd in order to do so.

[3] *Xun Wang*, 505 Mich 251; *Nowack*, 462 Mich at 400.

reasonable doubt,[4] and the evidence was sufficient to support defendant's conviction of second-degree murder.

### III. JURY SELECTION

Defendant argues that he is entitled to a new trial because six jurors were dismissed based on their past criminal charges in Berrien County under *People v Eccles*, 260 Mich App 379; 677 NW2d 76 (2004), which he asserts was wrongly decided. We disagree; the trial court did not err by following the clearly established law.

This Court reviews de novo whether the trial court properly applied the law relevant to jury selection. *People v Fletcher*, 260 Mich App 531, 554; 679 NW2d 127 (2004). Whether the trial court properly applied constitutional standards is also reviewed de novo. *People v Clark*, 330 Mich App 392, 415; 948 NW2d 604 (2019). The trial court's factual findings underlying its application of the law are reviewed for clear error. *People v Bryant*, 491 Mich 575, 595; 822 NW2d 124 (2012). A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court made a mistake. *Id*. This Court also reviews the trial court's handling of voir dire for an abuse of discretion. *People v Tyburski*, 445 Mich 606, 619; 518 NW2d 441 (1994) (opinion by MALLETT, J.). An abuse of discretion occurs when the trial court chooses an outcome outside the range of reasonable and principled outcomes. *Clark*, 330 Mich App at 415.

"A criminal defendant has the right to be tried by an impartial jury." *People v Rose*, 289 Mich App 499, 529; 808 NW2d 301 (2010). A prospective juror may be excused for cause if the juror "is biased for or against a party or attorney." MCR 2.511(E)(2).[5] The purpose of voir dire is to elicit information about the prospective jurors to determine a rational basis for excluding those who are not impartial. *People v Haynes*, 338 Mich App 392, 411; 980 NW2d 66 (2021). Jurors are presumed to be impartial unless shown otherwise. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008). The defendant bears the burden to demonstrate a juror is not impartial or that there is basis for reasonable doubt as to the juror's impartiality. *Id*. A prospective juror should be excused for cause when they demonstrate bias in favor of or against a party, when they have a state of mind that will prevent them from rendering a just verdict, or when their opinions would improperly influence a verdict. *People v Williams*, 241 Mich App 519, 521; 616 NW2d 710 (2000). Upon a party showing that a prospective juror falls within one of the parameters for challenging a juror for cause under MCR 2.511(E), the trial court must excuse that juror. *Eccles*, 260 Mich App at 383. MCR 2.511(E)(10) provides that a juror may be excused for cause if that person "is or has been a party adverse to the challenging party or attorney in a civil action, or has complained of or has been accused by that party in a criminal prosecution."

---

[4] *Bailey*, 330 Mich App 46-47.

[5] MCR 2.511 was renumbered effective January 1, 2024. Administrative Order No. 2022-11, 512 Mich cxxii-cxxiii (2023). As the rule is unchanged in substance, we will cite to the current version.

Defendant claims six jurors were improperly dismissed under *Eccles*.[6] The six jurors were each excused for cause under *Eccles* without discussion and with renewed objections by defense counsel. In *Eccles*, 260 Mich App at 381-388, this Court analyzed whether the trial court properly excused jurors under then MCR 2.511(D)(10) (whose identical language is found at MCR 2.511(E)(10) as of January 1, 2024) based on the prosecution's challenges for cause for jurors charged with a misdemeanor by the same county's prosecutor's office. The *Eccles* Court relied on former MCR 2.511(D)(10, providing for cause challenges to prospective jurors who have " 'complained of or has been accused by that party in a criminal prosecution.' " *Eccles*, 260 Mich App at 381, quoting former MCR 2.511(D)(10). The *Eccles* Court held that prospective jurors who had been the subject of a criminal prosecution had an impaired ability to render a fair and impartial verdict, and as such, prospective jurors with a previous misdemeanor charge were properly excused for cause under the court rules. *Id.* at 383-384.

Although defendant provides a list of the crimes each juror excused under *Eccles* was charged with in his brief on appeal, there is no record of the six jurors' past experiences with the Berrien County Prosecutor's Office. There is no record evidence whether each juror had been charged or fully convicted, though defense counsel stated on the first day of trial that they were all misdemeanor offenses. At that time, the prosecutor asserted that all the identified *Eccles* challenges were charged in Berrien County. Given the lack of record, however, defendant has failed to show that the trial court plainly erred by applying *Eccles* to excuse the six jurors. *Eccles* remains good law, and the trial court was required to apply its holding. See MCR 7.215(C)(2) (providing that published opinions of this Court have precedential effect under the rule of stare decisis) and MCR 7.215(J)(1) (providing that this Court must follow the rule of law established by a prior published decision of this Court issued on or after November 1, 1990, unless it has been modified or reversed by the Supreme Court or a special panel of this Court). Thus, any discussion of defendant's argument about *Eccles* having been wrongly decided is unnecessary.[7]

IV. SENTENCING

A. PROPORTIONALITY AND REASONABLENESS

Defendant raises several arguments on appeal related to the validity of his sentence for second-degree murder. He first argues that his 50-year minimum was not proportionate to the

---

[6] We note that expressing satisfaction with the jury selected generally constitutes waiver of any objection to the jury as impaneled. See *People v Tate*, 244 Mich App 553, 558; 624 NW2d 524 (2001). Defense counsel indicated that he and defendant were satisfied with the jury at the end of voir dire. However, because defense counsel objected to each juror dismissed under *Eccles* and his objections were denied, review on the merits is appropriate.

[7] Regardless, this Court recently rejected many of the same arguments challenging *Eccles* in *People v Myers*, unpublished per curiam opinion of the Court of Appeals, issued September 19, 2024 (Docket No. 362506), pp 6-7, which, interestingly, also addressed prospective jurors previously criminally charged in Berrien County. Although unpublished opinions are not binding, the reasoning of *Myers* is persuasive and applies with equal force to defendant's arguments. See *People v Urbanski*, 348 Mich App 90, 110 n 6; 17 NW3d 430 (2023).

circumstances surrounding the offense and the offender, and therefore, was unreasonable. We disagree.

This Court reviews the trial court's sentencing decision for an abuse of discretion. *People v Skinner*, 502 Mich 89, 131; 917 NW2d 292 (2018). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). Stated another way, a sentencing court abuses its discretion if the imposed sentence is disproportionate to the seriousness of the circumstances involving the offense and the offender. *Id*. at 460.

Defendant was sentenced to 50 to 75 years' imprisonment for second-degree murder as a fourth-offense habitual offender, MCL 769.12. The sentencing guidelines range for this offense was 315 to 1050 months' or 26.25 to 87.5 years' imprisonment. As such, his minimum sentence was within the guidelines.

Defendant first argues that his sentencing guidelines range was too wide. In *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015), the Michigan Supreme Court determined that Michigan's sentencing guidelines were advisory rather than mandatory but remained "a highly relevant consideration in a trial court's exercise of sentencing discretion." Trial court judges must still consult and take the guidelines into account when sentencing, and this system "help[s] to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." *Id*. (quotation marks and citation omitted). A guidelines range is determined by a statutory scheme. See MCL 777.1 *et seq*. Defendant's guidelines range was determined under MCL 777.61, based on his prior record variable (PRV) score of 52 points at Level E, and his total offense variable (OV) score of 120 points at Level III. His sentence was enhanced based on his fourth-offense habitual-offender status. See MCL 777.21(3)(c). Because defendant's guidelines range was calculated under this set statutory scheme, there is no error attributable to the trial court for the broadness of the range.

For sentences that fall within a guidelines range, "there is a nonbinding presumption of proportionality." *People v Posey (On Remand)*, 349 Mich App 199, 203; 27 NW3d 137 (2023). The defendant bears the burden to prove that their within-guidelines sentence is unreasonable or disproportionate. *Id*.

> An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense. With respect to sentencing and the guidelines, the key test is not whether a sentence departs from or adheres to the guidelines range. The key test is whether the sentence is proportionate to the seriousness of the matter. In regard to proportionality, the *Milbourn* Court observed that the Legislature has determined to visit the stiffest punishment against persons who have demonstrated an unwillingness to obey the law after prior encounters with the criminal justice system. The premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more

recidivist the criminal, the greater the punishment. [*Id*. at 204 (quotation marks and citations omitted).]

Defendant argues his sentence was not proportionate because it did not account for the mitigating factors of youth. He relies on the neuroscience supporting the decision in *Miller v Alabama*, 567 US 460; 132 S Ct 2455; 183 L Ed 2d 407 (2012), and its progeny, specifically citing *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022), which defendant concedes is limited to 18-year-olds. However, defendant was 24 years old at the time of his crime. Further, a sentencing court is required to consider the mitigating factors of youth when sentencing a *juvenile* for second-degree murder, a juvenile being a defendant who is 18 years old or younger at the time of the crime. See *People v Eads*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 357332); slip op at 14. As such, the trial court did not err by not considering defendant's youth, although it did express there was "no pleasure" in sentencing a young man.

Lastly, defendant argues that the *Snow* factors do not support his sentence, i.e., "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972). Defendant claims the court only addressed protection of society and punishment, but the trial court gave a well-reasoned explanation for its sentence. The court concluded that defendant was not acting in self-defense, but rather, out of revenge or retaliation, resulting in an unnecessary death. The court did not want to sentence a young man to leave his children and family, but believed it was best to separate defendant from society. The court explicitly stated that it was sentencing defendant to a within-guidelines sentence based on protection of the community, punishment, deterrence, restitution, and reformation.

The trial court did not err, and defendant fails to prove that his sentence was disproportionate or unreasonable. Defendant shot and killed Lloyd at close range over a verbal altercation, and defendant was a fourth-offense habitual offender. Thus, defendant's 50-year minimum sentence for second-degree murder was proportionate and reasonable given the egregiousness of the offense and his demonstrated inability to follow the law. *Posey (On Remand)*, 349 Mich App at 204.

## B. ACQUITTED CONDUCT

Next, defendant argues that the trial court improperly sentenced him based on acquitted conduct. We disagree.

To preserve a challenge to a sentence within the sentencing guidelines range, the defendant must raise the issue at sentencing, in a motion for resentencing, or in a motion to remand. *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004). Fort the first time on appeal, defendant raises the argument that the trial court improperly sentenced him based on acquitted conduct. Therefore, this issue is not preserved and is instead reviewed for plain error affecting substantial rights. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). To obtain relief under the plain error rule, defendant must prove that "(1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected substantial rights, i.e., prejudiced defendant by affecting the outcome of the proceedings." *Id*. (quotation marks and citation omitted). If defendant meets this burden, the reviewing court must then determine "whether the plain error seriously

affected the fairness, integrity, or public reputation of the judicial proceedings independent of defendant's innocence." *Id*. at 280.

Defendant was charged with open murder under MCL 750.316. "[T]he elements of first-degree murder are "(1) the intentional killing of a human (2) with premeditation and deliberation." *People v Oros*, 502 Mich 229, 240; 917 NW2d 559 (2018) (quotation marks and citation omitted). Premeditation and deliberation is the distinguishing factor between first-degree and second-degree murder. *Id*. at 241. At defendant's trial, the jury was instructed on first-degree and second-degree murder as well as voluntary manslaughter. The jury convicted defendant of the lesser included offense of second-degree murder.

"[D]ue process bars sentencing courts from finding by a preponderance of the evidence that a defendant engaged in conduct of which he was acquitted," or sentencing defendant based on that acquitted conduct. *People v Beck*, 504 Mich 605, 629-630; 939 NW2d 213 (2019). Defendant argues that certain statements made by the trial court evidence that the court sentenced defendant based on acquitted conduct, i.e., first-degree murder, because the court considered premeditation. We disagree. When read in context, the court did not sentence defendant based on acquitted conduct.

When defendant spoke at sentencing, he expressed remorse and apologized to Lloyd's family, but also said, "in my case it was self[-]defense." He said he had issues with Lloyd and never wanted to shoot him, but Lloyd kept walking toward him, as seen in the videos. In response to defendant, the trial court said it had several opportunities to view the surveillance video footage, and it did not believe "that under any viewing of the video could somebody believe that this is self[-]defense, and in fact, the jury rejected that defense of yours." The court then stated it was clear defendant did not react to an immediate threat, but acted out of feeling disrespected and wanting revenge, and based on what was seen in the videos, the killing was not justified. Defendant focuses on the following statement by the trial court: "While the jury did not find you guilty of first[-]degree murder and I am not sentencing you on first[-]degree murder, this was simply a callous disregard for the human life of another, and for that, sir, you must be kept away from society." Read in context, the trial court's reasoning for sentencing defendant followed by this last sentence did not indicate that the trial court improperly sentenced defendant as if he had been convicted of first-degree murder rather than second-degree murder in violation of defendant's due-process rights. *Id*. The trial court's comments could be considered as related to malice, an element of second-degree murder. See *Wafer*, 509 Mich at 40. As such, no plain error occurred affecting defendant's substantial rights, and he is not entitled to resentencing. *Anderson*, 341 Mich App at 279-280.

## C. GUIDELINES SCORING

### 1. OV 5

Next, defendant raises challenges to the scoring of three separate OVs. He first argues that the trial court improperly scored 15 points for OV 5 for serious psychological injury to a member of Lloyd's family. We disagree.

The trial court's findings of fact under the sentencing guidelines are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (quotation marks and citation omitted). This Court reviews de novo whether the facts, as found by the trial court, are adequate to satisfy the statute's prescribed scoring conditions. *Anderson*, 322 Mich App at 634. When calculating the sentencing guidelines, the sentencing court may consider all record evidence, including the presentence investigation report (PSIR) and all preliminary examination and trial testimony. *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170 (2012). The interpretation and application of the sentencing guidelines are legal questions reviewed de novo. *People v Dupree*, 511 Mich 1, 5; 993 NW2d 185 (2023).

Under MCL 777.35(1), OV 5 is scored for psychological injury to a member of a victim's family. Fifteen points are assessed when "[s]erious psychological injury requiring professional treatment occurred to a victim's family," and zero points are assessed when "[n]o serious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a)-(b). The statute further provides, "Score 15 points if the serious psychological injury to the victim's family may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.35(2). " OV 5 is scored when a homicide or homicide-related crime causes psychological injury to a member of the decedent's family." *People v Baskerville*, 333 Mich App 276, 292; 963 NW2d 620 (2020). In the context of this OV, the term "serious" has been defined as "having important or dangerous possible consequences." *Id*. (quotation marks and citation omitted). "In scoring OV 5, a trial court should consider the severity of the injury and the consequences that flow from it, including how the injury has manifested itself before sentencing and is likely to do so in the future, and whether professional treatment has been sought or received." *Id*. (quotation marks and citation omitted).

At sentencing, Lloyd's mother, Ebony Ellis, stated that Lloyd's children were lost, angry, and hurt without their father. She stated that she and her grandchildren were going to go to counseling because of the anger they experienced. She stated that her grandchildren had anger issues since Lloyd's death, and one of her grandsons was having outbursts at school. Ellis herself was experiencing high blood pressure and loss of sleep after her son's death. The children's mother has had suicidal thoughts since Lloyd's death and was also going to start counseling. Based on this evidence, the trial court did not clearly err in determining that OV 5 was scored at 15 points.

### 2. OV 3

Defendant argues that OV 3, physical injury to a victim, was improperly scored, and that controlling caselaw on the scoring of this OV, *People v Houston*, 473 Mich 399; 702 NW2d 530 (2005), was wrongly decided.

To preserve a challenge to the scoring of the sentencing guidelines, the challenge must be raised "at sentencing, in a proper motion for resentencing, or in a proper motion to remand filed in the court of appeals." MCR 6.429(C); *People v Clark*, 315 Mich App 219, 223; 888 NW2d 309 (2016). Defendant did not raise any challenge to the scoring of OV 3 at sentencing or in an appropriate motion; therefore, the issue is not preserved. As stated above, unpreserved issues are reviewed for plain error affecting substantial rights. *Anderson*, 341 Mich App at 279-280.

Under MCL 777.33, OV 3 is scored for physical injury to a victim. 100 points are assessed where a victim was killed, and the death results from the commission of a crime where homicide is not the sentencing offense. MCL 777.33(1)(a) and (2)(b). Otherwise, 50 points are assessed where a victim was killed, and the death results from the commission of a crime and the offense or attempted offense involves the operation of specified vehicles under specified circumstances inapplicable here, or 25 points are assessed where "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(b)-(c) and 2(c).

As an initial matter, at sentencing, it was actually the prosecutor who raised the correction to the scoring of OV 3, asserting it should be scored at 25 points. Although a victim was killed, the sentencing offense was homicide such that scoring 100 points is not appropriate and the elements prerequisite to scoring 50 points under MCL 777.33(1)(b) are not present. However, the prosecutor noted that, under *Houston*, 473 Mich at 405-407, 25 points under MCL 777.33(1)(c) is appropriate for a life-threatening injury occurring just before death. Defense counsel stated that they agreed with the scoring change because it benefited the defendant, and 25 points were assessed for OV 3. As such, defendant waived any challenge to the scoring of OV 3 and extinguished any error. Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carines*, 460 Mich 750, 762 n 7; 597 NW2d 130 (1999) (quotation marks and citation omitted). A defendant who waives a right may not request appellate review of the deprivation of that right because his waiver extinguished any error. *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). To waive a known right, the defendant must clearly express satisfaction with the trial court's decision, *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011), which defense counsel did here. Permitting appellate review of a waived issue would improperly permit counsel to harbor error at trial and use the error later as an appellate parachute. *Id*. at 505. As such, defendant's challenge to the scoring of OV 3 is waived, and we decline to discuss his argument that *Houston* was wrongly decided.

### 3. OV 9

Lastly, defendant argues that OV 9 was improperly scored at 25 points based on the number of people inside the gas station when defendant shot and killed Lloyd. We disagree.

OV 9 is scored based on the number of victims. MCL 777.39. 25 points are assessed if "[t]here were 10 or more victims who were placed in danger of physical injury or death, or 20 or more victims who were placed in danger of property loss." MCL 777.39(1)(b). Only 10 points are assessed if there were two to nine victims placed in danger of physical injury or death. MCL 777.39(1)(c). A victim for purposes of OV 9 is an individual who "is placed in danger of injury or death when the offense was committed," and "[p]oints assessed under OV 9 must be based solely on the defendant's conduct during the sentencing offense." *People v Rodriguez*, 327 Mich App 573, 581-582; 935 NW2d 51 (2019).

Defendant asserts that, based on the surveillance footage, only four people were "within the risk area" at the time of the shooting. This included two small female children, one male adult who can be identified as Newbern based on his clothing, and one store employee. There is one video, however, where a clear head count can be taken of all of the individuals inside the gas station or right outside the door at the time of the shooting. There were 10 people in close proximity when defendant fired the shot: (1) Lloyd, (2) Newbern, (3) one young-adult female,

(4) a second young-adult female, (5) one female child, (6) a second female child, (7) an adult male in a black shirt and red shorts, (8) an adult male in a black shirt and yellow shorts, (9) one store clerk, and (10) a second store clerk. The two unknown adult males seemingly exited the store when defendant and Lloyd were arguing, but remained right outside the door and reentered after defendant fired the single shot. In *Rodriguez*, 327 Mich App at 582, this Court upheld an assessment of 10 points under OV 9 for two to nine victims where the defendant robbed one victim, but another person stood outside the apartment and watched the robbery. Although the other individual was outside the apartment, he was still in close proximity to the robbery and properly counted as a victim for purposes of scoring OV 9. *Id*. See also *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013) ("[A] close proximity to a physically threatening situation may suffice to count the person as a victim."), vacated in part on other grounds 495 Mich 876 (2013). Therefore, the trial court did not abuse its discretion by assessing 25 points for OV 9 as even the two adult males right outside the gas station door were in close proximity to the physically threatening situation.

Because none of the defendant's challenges to the OV scoring on appeal are successful, there is no change to his total OV score and no change to his sentencing guidelines range. As such, defendant is not entitled to resentencing. See *People v Barnes*, 332 Mich App 494, 500 n 2; 957 NW2d 62 (2020) ("Where a sentencing error does not alter the appropriate guidelines range, resentencing is not required.") (quotation marks and citation omitted).

## D. HABITUAL-OFFENDER STATUS

Lastly, defendant argues that he is entitled to resentencing without a fourth-offense habitual-offender enhancement because the prosecution failed to file a notice of intent seeking such an enhancement within the statutory timeframe.[8]

"An issue is preserved for appeal if it is addressed to the trial court, irrespective of whether the issue is addressed by the trial court." *People v Meeker*, 340 Mich App 559, 568; 986 NW2d 622 (2022). Defendant raised this issue for the first time on appeal in his supplemental brief. The issue is therefore not preserved because it was never raised in the trial court and is reviewed under the plain error analysis already set forth herein. *Anderson*, 341 Mich App at 279.

MCR 6.112(C) requires the prosecutor to file the information or indictment "on or before the date set for the arraignment." MCL 769.13(1) and (2) provide:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if

---

[8] After filing his brief on appeal, defendant moved this Court to add this issue on appeal. The Court granted his motion and accepted for filing the supplemental brief attached thereto, which included this issue. *People v Autry*, unpublished order of the Court of Appeals, entered April 15, 2025 (Docket No. 365946).

arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

The felony warrant in this case was entered in the district court on August 9, 2021. It charged defendant with open murder, felon-in-possession, felon-in-possession of ammunition, CCW, and three counts of felony-firearm. A felony complaint was issued the same day; however, the copy in the lower court file seems to be missing any additional pages past the first page. Defendant was arraigned on the complaint on August 11, 2021. There was no mention of a habitual-offender enhancement at the arraignment.

On December 21, 2021, defendant entered a plea of not guilty without arraignment under MCR 6.113, indicating he intended to demand a jury trial. MCR 6.113(C) provides that:

> A defendant represented by a lawyer may, as a matter of right, enter a plea of not guilty or stand mute without arraignment by filing, at or before the time set for the arraignment, a written statement signed by the defendant and the defendant's lawyer acknowledging that the defendant has received a copy of the information, has read or had it read or explained, understands the substance of the charge, waives arraignment in open court, and pleads not guilty to the charge or stands mute.

The form signed by defendant and his initial attorney stated as follows:

1. I am represented by a lawyer in this case.

2. I have received and read a copy of the complaint, warrant or information.

3. I understand the substance of the charge.

4. I waive arraignment in open court.

5. I plead NOT GUILTY to the charges.

6. I intend to DEMAND a jury trial.

7. I agree to appear at all future case events as scheduled in the Berrien County Trial Court.

-13-

At the bottom of the form was an order transferring the case from district court to the Berrien Circuit Court.

An amended information was served on defense counsel on January 20, 2022, but dated and signed on January 17, 2022, and filed with the court on January 18, 2022. The amended information indicates a fourth-offense habitual-offender status requiring a 25-year minimum sentence. It stated that defendant was previously convicted of three or more felonies, including at least one violent felony listed in MCL 769.12(6)(a), and provided defendant's three previous convictions—resisting and obstructing, attempted assault by strangulation, and another resisting and obstructing. As such, defendant was subject to the penalties included in MCL 769.12(1)(a), i.e., a mandatory minimum of 25 years for the open murder count.

Defendant argues that because his arraignment was held on August 11, 2021, and the amended felony information containing the habitual-offender enhancement was not filed until January 18, 2022, it violated the 21-day filing requirement in MCL 769.13(1), and defendant is entitled to resentencing without the enhancement. Defendant relies on *People v Cobley*, 463 Mich 893, 893; 618 NW2d 768 (2000), wherein the Supreme Court ordered a remand to the trial court for resentencing "because the prosecutor has not proven that the notice of sentence enhancement was served on defendant within 21 days after the defendant was arraigned."[9]

In this matter, at defendant's sentencing, the trial court asked defense counsel if he was in possession of the information filed indicating defendant's habitual-offender status. Defense counsel responded that he was, and said, "We have no objections to same. I think it's legally required." The court then took judicial notice of defendant's three previous felonies without objection by defendant, which were based on certified convictions from within Berrien County as provided by the prosecution. Based on defense counsel's agreement to the habitual-offender status at sentencing, this issue is waived. See *Kowalski*, 489 Mich at 503; see also *Carines*, 460 Mich

---

[9] Defendant also relies on the unpublished opinion *People v Muhammad (On Remand)*, unpublished per curiam opinion of the Court of Appeals, issued December 22, 2015 (Docket No. 317054), p 1, wherein this Court noted that it initially reversed the trial court's dismissal of the defendant's habitual-offender notice because the prosecution's failure to timely notify the defendant of its intent to enhance the defendant's sentence was harmless error. The Michigan Supreme Court vacated that decision and remanded for this Court to determine whether the trial court erred by concluding that the proper remedy for the statutory violation was dismissal of the habitual-offender notice. *Id*. This Court noted that MCL 769.13(1) provides that such notice "shall" be filed within the 21-day timeframe, and the prosecution conceded it failed to do so. *Id*. at 1-2. Based on the mandatory directive in the statute, the Court concluded that the failure to timely serve the notice prohibited the prosecution from proceeding as if it had, and the appropriate remedy was dismissal of the habitual-offender notice. *Id*. at 2.

at 762 n 7 (noting that waiver is the intentional relinquishment or abandonment of a known right), and *Carter*, 462 Mich at 216 (providing that waiver extinguishes any error).[10]

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen A. Feeney
/s/ Randy J. Wallace

---

[10] In any event, defendant is incorrectly arguing that the notice of sentence enhancement was served on defendant more than 21 days after his August 11, 2021 arraignment *on the complaint*, while MCL 769.13(1) makes clear that it must be served within 21 days after his arraignment on the information, "or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense." Here, defendant waived arraignment on the information when he was bound over to the circuit court as charged on December 21, 2021, and the information charging the underlying offenses and containing the habitual-offender enhancement was filed in the circuit court on January 18, 2022. This complies with MCL 769.13(1) where arraignment was waived and the enhancement was filed in circuit court simultaneous with the information charging the underlying offenses.